Charles L. KRUEGER, Appellant,

v.

Helen Mack YOUNG et vir, Appellees.

No. 4076.

Court of Civil Appeals of Texas.

Eastland.

Sept. 9, 1966.

Rehearing Denied Sept. 23, 1966.

Alfred M. Scott, Austin, for appellant.

Andrews, Kurth, Campbell & Jones, James W. Dilworth, Houston, for appellees.

GRISSOM, Chief Justice.

Charles L. Krueger, a lawyer, sued Helen Mack Young, widow of J. O. Mack, deceased, as statutory trustee of a dissolved corporation under then Article 1388, seeking a judgment requiring Mrs. Young to transfer to him 61,292.45 shares of stock in the Florida Gas Company, to which, he alleged, Mrs. Young held the legal title as trustee for Krueger, or for $796,801.85 in the event she refused to transfer said shares to plaintiff. Krueger alleged a right thereto by virtue of a contract made in February, 1952, with J. O. Mack, President of Houston Texas Gas and Oil Company, that, for his expenses and services as a lawyer and promoter of a gas pipeline, just before the stock in a proposed gas pipeline corporation was offered for sale to the public, he would be "permitted" to buy "some" stock at the price paid therefor by its founders and in sufficient numbers to pay for his services and expenses. Upon completion of plaintiff's case, the court discharged the jury and rendered judgment that plaintiff take nothing. Krueger appealed.

The amended petition upon which Krueger went to trial contained allegations that in February 1952, J. O. Mack was engaged in the promotional enterprise of planning, organizing, incorporating, financing and constructing an integrated natural gas pipeline system within the United States; that he was desirous of obtaining the services of a Texas lawyer, experienced in oil and gas law, oil and gas properties, corporate law and the customary forms of corporate structures and financing for such a system, which he alleged he was; that, because of Mack's shortage of capital, he desired to obtain plaintiff's services without paying him in money for his expenses or services; that in February, 1952, Mack induced Krueger to enter into a verbal agreement to become a joint venturer and founder with Mack, his wife, the appellee, and his son-in-law, Kleinkauf, of corporations Mack might employ in such venture, upon the following terms: Krueger would render the services requested by Mack and pay his expenses and, if the pipeline should be completed and proved successful, Krueger's expenses would be reimbursed and his services paid for "by being the owner of shares of corporate stock in the enterprise" and Krueger would become entitled to certificates evidencing ownership thereof upon paying the same amount of cash paid by Mack and his family for "founder's stock" which, he alleged, later proved to be $1.30 per share. Krueger alleged that it was also anticipated that after the pipeline corporation stock was offered to the public it would rapidly increase in price and plaintiff would make a profit on his shares, so that he would not only be paid for his expenses and services but obtain a large profit on his shares, as was also expected by the Mack family and other founders. Krueger alleged the agreement was, in essence, that he would be permitted to "get in on the ground floor as a founder" on the same basis as the Macks and others contributing capital in the form of cash or services to promotion of the enterprise, but that if the venture failed plaintiff would lose his expenses and services.

Krueger alleged the pipeline system was completed and stock therein was first offered to the public in August, 1958. He alleged the Florida Gas pipeline corporation was parlayed from a Texas corporation, capitalized for $1,000.00 in 1952 to a multi-million dollar system through the nominal ownership of three corporations or conduits:

1. Houston Texas Gas & Oil Company, a Texas corporation;

2. Houston Texas Gas and Oil Corporation, a Delaware corporation, and

3. The Houston Corporation, incorporated March 19, 1957, but which, in July

1962, changed its name to Florida Gas Company.

Krueger alleged that during the existence of the Texas corporation Mack, Mrs. Helen Mack (Young) and Kleinkauf, were its stockholders, directors and officers and, from incorporation of the Delaware corporation, in July, 1953, until 1957, they were the stockholders, directors and officers of the Delaware corporation, that Mack controlled them, until his death in May, 1955, in such way that the court should disregard corporate entities and treat J. O. Mack as the alter ego of said corporations.

Krueger alleged that, beginning in May, 1952, and continuing until June, 1954, in accord with his agreement, he rendered services of the value of $77,700.00 and expended $1,980.19; that Mack, Mrs. Mack (Young) and Kleinkauf issued stock in the Delaware corporation to themselves at $1.30 per share; that this was the price at which plaintiff and Mack had agreed stock should be issued to plaintiff for his services and expenses and, therefore, plaintiff should acquire 61,292.45 shares at $1.30 per share to reimburse him for his expenses and compensate him for his services, without affording him any profit on his stock as contemplated by him and Mack; that such shares in the Delaware corporation, when they were exchanged for stock in the Florida Gas Company on a share-for-share basis in April 1957 by the Macks and other founders, had a cash market value of $13.00 per share, so that the shares to which plaintiff was entitled has a value of $796,801.85.

Krueger alleged that from formation of the Texas corporation in May, 1952, and the Delaware corporation in 1954, until the death of J. O. Mack on May 7, 1955, the appellee, Helen Mack (now Young), was a stockholder, director and officer in said corporations and the wife and secretary of J. O. Mack and knew, or was charged with knowledge, of Krueger's contract with Mack and of his rendition of services and outlay of expenses.

Krueger alleged that in March, 1955, J. O. Mack, his wife and son-in-law, the only stockholders, directors and officers of the Texas corporation, without Krueger's knowledge or consent, caused it to be dissolved and that they stripped it of its assets leaving its debt to Krueger unpaid. Krueger alleged the liability of Mrs. Young substantially as follows: That under Articles 1388–1392 Mrs. Young and Kleinkauf became trustees of its assets for its creditors; that Krueger had a lien on its assets "which vested in plaintiff both the legal and the equitable right to trace and pursue and identify all of such assets and to subject them and their mutations and accretions to the satisfaction" of his claim. Krueger alleged that when said Texas corporation was dissolved it had assets of $550,000.00, consisting of 187,500 shares of stock of the Delaware corporation of the value of $1.30 per share, with a total value of $243,750.00, engineering data and reports worth $250,000.00 and "Other funds paid to J. O. Mack personally to the extent of $56,250.00" to apply as a credit on a total of $315,382.82, which Mack had advanced to said Texas corporation. Krueger then alleged that, in July 1954, J. O. Mack, appellee and Kleinkauf, incorporated said Delaware corporation without his knowledge or consent, and converted the assets of the Texas corporation, of the value of $550,000.00, which they held in trust for him, by transferring them to the Delaware corporation, being 187,500 shares of stock worth $1.30 per share, or $243,750.00, and for payment by the Delaware corporation to J. O. Mack personally of $56,250.00 as a credit on the $315,382.82 Mack had advanced to the Texas corporation. Krueger alleged that Mack, Mrs. Young and Kleinkauf caused the Delaware corporation to receive said assets of the Texas corporation for $300,000.00, in violation of their statutory trust for the benefit of plaintiff.

Krueger alleged that in December 1954, J. O. Mack and the Delaware corporation, then under his domination and control, began contracting for construction of said

pipeline system and, in April, 1957, Mrs. Young, her daughter and son-in-law exchanged their stock in the Delaware corporation on a share-for-share basis for stock in the Florida Gas Company, which had a value of $13.00 per share; that thereby the Mack family acquired stock in the Florida Gas Company with the Delaware stock, "to which plaintiff was entitled to resort for satisfaction of his claim" and that their stock in the Florida Gas Company came into the trust fund for the Texas corporation assets, on which plaintiff had a lien, all in violation of the statutory trust.

Plaintiff alleged that, anticipating dissolution of the Texas corporation, in March, 1955 and on May 2, 1955, five days before the death of J. O. Mack, appellee and Kleinkauf further violated their statutory trust by converting to their own use 187,500 shares of stock of the Delaware corporation, which were the only remaining assets of the Texas corporation; that they converted said shares, purportedly in liquidation of the Texas corporation and as payment of their claimed interests therein.

Krueger alleged that J. O. Mack, appellee and Kleinkauf received 25.39% of the stock of the Florida Gas Company; that, Mrs. Helen Mack Young received 121,616 shares of stock in the Florida Gas Company; that Mack died on May 7, 1955, leaving a will bequeathing to appellee his community one-half interest therein; that appellee owned her community one-half interest, or $50.00, in the stock of the Texas corporation and for her $50.00 investment in the Texas corporation she came out of the corporate maneuvering with stock in the Florida Gas Company worth $1,459,392.-00, but that she acquired only the naked legal title to stock in all said corporation, it being subject to the equitable lien and claim of plaintiff.

Krueger alleged that appellee did not repudiate her statutory trust until July 6, 1959, when she expressly refused to recognize his claim for any amount. He prayed for judgment requiring Mrs. Young to transfer to him 61,292.45 shares of stock in the Florida Gas Company, "to which she now holds the legal title", or for a money judgment for $796,801.85, in the event she refused to transfer said stock to plaintiff; and for a money judgment amounting to $13.00 per share, less $1.30 per share, for each share she failed to transfer to him. Plaintiff's prayer concluded with a request for judgment for the value of the corporate assets of the Texas corporation "converted" by Mrs. Young in acquiring her stock in the Florida corporation.

Mrs. Young denied that the contract sued on was ever made and answered, among other things that, if made, it was unenforceable under the Statute of Frauds and barred by the two and four year Statutes of Limitation.

Appellant presents four procedural points to the effect that the court erred in quashing the deposition of W. T. Mack, Jr., in excluding it and in sustaining objections to certain testimony about the amount of expenses incurred and services rendered by him. Appellant's fifth point is that the court erred in granting defendant's motion for a directed verdict, withdrawing the case from the jury and rendering judgment for Mrs. Young.

We shall specifically discuss only the following counterpoints and contentions. Appellee contends that she established her pleaded affirmative defenses that (1) the contract asserted by appellant was not to be performed within one year from the making thereof and, therefore, it was unenforceable by virtue of the Statute of Frauds, Article 3995, Section 5, and (2) it was barred by the two and four year Statutes of Limitation. Articles 5526 and 5529. If either of these defenses was established the procedural errors assigned become immaterial because, regardless of the alleged errors, judgment should have been rendered for Mrs. Young.

We sustain appellees' first counterpoint that the court did not commit re-

versible error in withdrawing the case from the jury and rendering judgment for appellee because she established that the oral contract sued on is unenforceable by virtue of the Statute of Frauds. This suit was filed May 23, 1961. The oral contract that is the basis of this suit is alleged to have been made in February 1952. Article 3995, Sec. 5, of the Statute of Frauds, provides that no action shall be brought upon any agreement not to be performed within one year unless it is in writing and signed by the party to be charged therewith. It applies only when the contract cannot be performed within a year. However, where the agreement cannot, either by its terms or by the nature of the required performance, be performed within one year it comes within the statute. "A verbal contract that specifies no definite time for performance but that, of necessity, requires more than a year for performance according to a reasonable interpretation of its terms is within the statute of frauds." 26 Tex.Jur.2d Section 32 pages 193, 194. Our Supreme Court's decision in Hall v. Hall, 158 Tex. 95, 308 S.W.2d 12, is decisive of the question. There, the plaintiff was employed under an oral contract to develop an exclusive sales territory for defendant's products in the northeastern quarter of the United States. No time for performance was stated. Duration of performance was implied. The defendant pleaded Section 5, Article 3995, as a defense barring enforcement of the contract because it was oral and was not to be performed within one year. The court said that where the contract provides for performance of acts which cannot be performed in one year, the statute applies. It held that the mere fact that duration of performance was implied did not prevent it from coming within the statute; that what is a reasonable time for performance must be determined by the circumstances. It said that the basic rule for determining whether a contract came within the statute was whether it appeared from its terms that performance could not be completed within one year and that what was implied was as much a part

of the contract as that which was expressly stated. The court held that provisions for what was to be done showed the contract could not be performed within a year and that it was, therefore, within the statute. In Bratcher v. Dozier, 162 Tex. 319, 346 S.W.2d 795, 797, our Supreme Court construed an oral contract where said statute was pleaded as a defense and correctly came to the opposite conclusion. The facts there relied on to bring the agreement within the statute were clearly insufficient to show that it could not be performed within a year. Consideration thereof bolsters our conclusion that the facts of the instant case compel a conclusion that the alleged contract is within the prohibition of said statute. Here, Krueger was required to help in planning, developing and successfully completing an integrated gas pipeline from Texas into southern Florida. The formation of different companies, obtaining tremendous gas reserves, finances, expert advice and workmanship for organization, development and completion of such a project, obtaining from the Federal Communications Commission a certificate of necessity and convenience, obtaining a permit for the sale of stock in the final pipeline corporation from the Securities and Exchange Commission and the infinitesimal requisites of such a tremendous undertaking, had to be completed and the stock ready for sale to the general public before appellant, under his own testimony, had an option to purchase stock in the final gas pipeline corporation at the price paid therefor by its founders. Consideration of the many prerequisites, under appellant's own testimony, shows impossibility of its performance within one year. Appellant testified that he was paid off by the Texas corporation in May 1954 and quit in June 1954, so that he could devote all his time to a case in West Texas. But, regardless of such testimony and considering only the necessary time, we find that he testified that from the last date he performed service, the promoters and builders of the pipeline moved remarkably fast, but that, nevertheless, the project required about

seven years to complete. This pipeline that appellant, under his own testimony, had to help put over and complete before he was entitled to anything, was a two hundred million dollar project involving a large line, about 1600 miles long, running from the lower Rio Grande Valley of Texas into the southern part of Florida which required about seven years to complete. It is uncontroverted that at the time the contract was alleged to have been made it was understood and contemplated that it would necessarily require several years for it to be performed. Appellant testified:

"A. Well, Mr. Dilworth, Mr. Mack and I were both very aware of a lot of the obstacles, anything from the right-of-way to New York bankers, to everything else.

Q. You knew it was going to take several years at least?

A. We sure did.

Q. It took seven years to complete the project?

A. I will say six and a half anyhow, possibly seven.

Q. You all were aware at the time you started it was going to take a long time?

A. We sure were; yes, sir.

Q. Which would necessarily involve several years of work?

A. That's right.

Q. All right, Did you have any minimum projected period at the time you started

* * *

A. No, sir, we didn't * * *

Q. You just knew it would take several years?

A. Yes."

When no time for performance is specified a reasonable time will be implied, considering the nature and purpose of the agreement. What is a reasonable time must be determined by all the circumstances, the situation of the parties and the subject matter of the contract. Cheek v. Metzer, 116 Tex. 356, 291 S.W. 860, 863. What constitutes reasonable time when the facts are undisputed becomes a question of law. Whether this contract comes within the Statute of Frauds is a question of law. Bratcher v. Dozier, 162 Tex. 319, 346 S.W. 2d 795, 796; Housing Authority of City of San Antonio v. Newton, two year statute, Tex.Civ.App., 235 S.W.2d 197; McDonald, Texas Civil Practice, Sec. 11.28, page 1041. We hold that the contract is unenforceable against appellees' defense that it was unenforceable under our Statute of Frauds, Article 3995', Sec. 5.

Appellant argues that said statute is inapplicable because his petition, on its face, does not show the agreement could not be performed within a year. Allegations are not alone determinative of the question. The entire record must be looked to and, where a plaintiff pleads or proves an agreement which requires more than a year for performance, as determined from the circumstances surrounding the parties, the situation and the subject matter thereof, it is within the statute. 26 Tex.Jur.2d page 193. Cheek v. Metzer, supra, and Hall v. Hall, supra. It must be remembered that all the things mentioned had to be successfully completed before appellant, under his own version of the contract, was entitled to buy some stock. The contract was made not later than June, 1952. Under his testimony it could not have been performed within a year; he was not entitled to buy stock until just before it went on sale to the general public, which turned out to be 1958. See San Francisco Brewing Corporation v. Bowman, 52 Cal.2d 607, 343 P.2d 1. Section 5, Article 3995, was established as a defense.

Article 5526 requires all actions for conversion of personal property and for debt, not evidenced by a contract in writing, to be commenced within two years after the cause of action accrues. Article 5529

provides that every action, other than for recovery of real estate, for which no limitation is otherwise provided, shall be brought within four years after the right to bring same shall have accrued. We hold that appellant's right to recover is barred by said statutes. Appellant's own testimony was that the contract was that he was to have an option to buy some stock in some corporation when the pipeline system was successfully completed and its stock was ready to be offered to the general public, at the price paid therefor by its founders. Appellant's testimony shows he had merely an option to buy some stock in some future corporation at a price to be determined by future events. The number of shares, the price to be paid, what corporation and when were among the uncertainties to be later determined. Whether he bought any stock was for his determination in the future. How did he then become the owner of stock in the corporation founded in 1952 that was dissolved, or for that matter in any of said corporations. There is no indication that he became a share holder in the Texas corporation at any specific time, or of any specific number of shares, or that it was agreed that he should. Under his agreement, according to his own testimony, he owned no stock in the corporation which was dissolved. Under the theory last asserted by appellant, Mrs. Young is charged with liability for his alleged share in the assets of the Texas corporation formed in 1952 and dissolved in 1954. Krueger must know the dissolved corporation was indebted to him. That theory is inconsistent with his testimony that he had an option to buy stock in a new gas pipeline corporation just before its stock was offered for sale to the general public. He says he had a right to buy it at $1.30 per share. If he became a stockholder in the corporation when he rendered services and spent his money, payment of $1.30 per share to make him the owner would have been unnecessary. As shown by appellant's testimony, whether he could and would pay the price to be later determined for the new corporation's stock were matters awaiting future events and his then desire. Incidentally, he was paid all he claimed the then corporation owed him in May 1954 and he withdrew from the project in June, 1954. The record does not show that he rendered any services or spent any money during the time intervening. If he did, his testimony, at most, showed no more than an executory option to purchase which is now barred by the Statute of Frauds and the two year Statute of Limitation. Articles 3995 and 5526. Appellant testified to an executory option to purchase made in 1952. Appellant admits he wrote Mr. Mack in 1954, a few days before he withdrew from the project, telling Mr. Mack he would make no charge for increasing the capital of the Texas Corporation because he wanted to gamble with him and he still had "hopes" that "if" the pipeline was completed and proved successful that he would be "permitted" to buy "some" stock at the founders' price just before it went on sale to the general public, or, if not, that he might then be permitted to "work for a few shares." Mr. Mack's reply was for appellant to forget it. In June 1958, long after Mr. Mack's death, appellant wrote Kleinkauf that he had a verbal contract with Mr. Mack to buy a few shares of stock at a cheap price. Appellee says, certainly with some justification, that appellant's claim has progressed from one by which he claimed the right to buy a few shares in June 1954, more shares in June 1958, to the right to buy 900 shares in December 1959, 7,359 shares in 1961 and 61,292.45 shares in 1965.

Appellant's alleged cause of action must be for personal services rendered and expenses incurred between May 1952 and the latter part of June 1954, when he quit. This suit was filed May 23, 1961 about seven years after the last service was claimed to have been performed. Therefore, it is barred by the two year statute of limitations. Article 5526. It is also barred by the four year statute of limitations. Article 5529. We think subdivision 4 of Article 5526 is applicable because appel-

lant's cause of action is for a debt based upon an oral contract for the value of his services and for expenses incurred, or for damages caused by its breach, according to his own clear and unequivocal testimony, by which he is bound. Simmonds v. St. Louis, B. & M. Ry. Co., 127 Tex. 23, 91 S.W.2d 332. The contract testified to by him was oral and gave him only an option to purchase "some" stock in some future pipeline corporation at whatever price was being paid therefor by its founders when stock in that gas pipeline company was offered for sale to the public, which he testified was August 18, 1958, more than two years before he filed suit. He testified:

"Q. Well, is your suit a suit for damages or a loss of legal fee or failure to pay you? You still haven't satisfied me, Mr. Krueger, to tell me what your case is about and what your theory of recovery is.

A. It is primarily for the failure to permit me to buy some stock at the same price as the family.

Q. It is a breach of contract that you had with Mr. Mack; is that right?

A. That is right.

Q. * * * Was it written or oral?

A. Oral."

■ Appellant now says appellee was sued as a trustee of a statutory Trust imposed upon her by then Article 1388 and that limitation did not commence to run until she repudiated this trust by her letter of July 6, 1959. In his brief, he asserts he owned the equitable "title" to "some" stock in the "dissolved" corporation. He cannot urge equitable title here because the option to purchase he testified to could convey no title. He must rely upon the asserted trust theory and delayed repudiation thereof to escape the bar of the two year statute of limitations. Nevertheless, if appellee is such a statutory trustee, she is in the same position as the corporation would have been. He could have no cause of action against appellee unless he had a cause of action against the corporation when it was dissolved. Article 1388 attempted no more than to substitute a statutory trustee for the corporation to the extent of its property that came into the hands of such trustee. If appellant's claim against the dissolved corporation was barred when his suit was filed it is barred against the trustee who stands in lieu thereof by virtue of said statute. Dean Hildebrand in Texas Corporations, Volume 3, page 394, states "the fact that those in control hold as trustees for the creditors does not stop the running of limitations against the creditors."

In Orange Lumber Co. v. Toole, Tex.Civ. App., 181 S.W. 823 (writ ref.) the court said:

"Appellee, however, contends that West was sued as a trustee, in possession of property of a dissolved corporation, under and by virtue of the law, and therefore limitation would not run in his favor as against a creditor of the corporation until West in some way gave notice of his repudiation of the trust. We think the authorities are uniformly against such contention."

■ Appellant contends he is suing Mrs. Young as a statutory trustee and that limitation did not begin to run until she repudiated the trust. In Orange Lumber Company v. Toole, the court said the authorities were uniformly against that contention. If appellant's suit is, as he testified it was, for breach of an agreement to permit him to buy "some" stock his cause of action could not have accrued later than August 18, 1958, the last day before the stock went on sale to the general public, according to his own pleading and testimony. Even if this late date is applicable, his cause of action was barred by the two year statute of limitations on August 19, 1960, which was more than nine months before he filed this suit on May 23, 1961. To toll the statute appellant was required to both plead and prove facts which stopped

the running of limitation for a sufficient length of time to prevent his case from being barred. Wise v. Anderson, 163 Tex. 608, 359 S.W.2d 876; 37 TJ 2d Sec. 200, p. 389. Despite all his ingenious arguments, he did not do this. We hold that appellant's asserted cause of action was barred by said Statutes of Limitation and unenforceable under the Statute of Frauds, and that reversible error is not shown by the points presented. They are overruled. The judgment is affirmed.