**METROMARKETING SERVICES, INC., Appellant,**

v.

**HTT HEADWEAR, LTD., Appellee.**

No. 14–98–01421–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 2, 2000.

Jeffery B. Kaiser, Houston, for appellant.

William A. Peterson, Jr., Houston, for appellee.

Panel consists of Justices YATES, FOWLER and FROST.

## OPINION

KEM THOMPSON FROST, Justice.

This breach of contract case arises out of an oral agreement for payment of com-

missions on business referrals. At issue is the enforceability of the agreement under the "Sales Representatives" statute and the viability of defenses to the breach of contract claim based on the Texas statute of frauds and the common law doctrine of accord and satisfaction.

## Introduction

Appellant, Metromarketing Services, Inc. ("MSI") brought a breach of contract action against appellee, HTT Headwear, Ltd. ("HTT"), seeking damages and an accounting for commissions allegedly due under an oral contract for sales referrals. HTT moved for summary judgment on the grounds that MSI's claim for commissions was barred under the "Sales Representatives" statute set forth in section 35.81, *et seq.* of the Texas Business and Commerce Code as well as the statute of frauds and the common law doctrine of accord and satisfaction. The trial court granted HTT's motion for summary judgment without specifying the grounds upon which the decision was based. MSI now presents six issues for our review, contending the trial court erred in granting summary judgment regardless of whether its decision was based on (1) the "Sales Representatives" statute, (2) the statute of frauds, or (3) accord and satisfaction. We find the trial court erred in granting summary judgment for HTT because the suit is not barred by either the "Sales Representatives" statute or the statute of frauds and a material question of fact exists as to MSI's accord and satisfaction defense. Accordingly, we reverse and remand.

## Factual Background

HTT is a manufacturer of specialty headgear. In January 1994, HTT entered into an oral agreement to pay MSI commissions for business referrals. The parties disagree as to the exact terms of the agreement. MSI asserts that HTT agreed to pay a commission of seven percent (7%) of the gross sales from customers MSI referred to HTT for third party orders.

HTT contends that it was to pay a seven percent (7%) commission on all orders submitted by MSI for customers billed directly by HTT.

MSI referred only one customer to HTT, E.J.R. Enterprises, Inc. ("EJR"). Beginning in the fall of 1994, EJR began placing large orders with HTT. In June 1995, MSI sent a letter to HTT requesting payment on twenty-three invoices totaling over $10,000 in commissions. Two months later, in September 1995, HTT tendered a check to MSI for approximately $2,400. HTT listed three invoice numbers and the amount paid on each invoice on the check stub. In addition, HTT included a handwritten notation on the check which read: "[F]inal payment for commission for EJR less deductions." MSI endorsed the check with the notation, "Accepted as Partial Payment," and cashed it. At the time it sent this check to MSI, HTT considered the business relationship between the companies to be over. HTT then refused to pay MSI commissions on twenty-three or more other orders EJR had placed with HTT. MSI brought this suit against HTT for breach of the business referral agreement.

## Standard of Review

We review summary judgments in accordance with the following rules:

(1) The movant has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;

(2) In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and

(3) Every reasonable inference must be indulged in favor of the non-movant and any doubts will be resolved in favor of the non-movant.

*See American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997) (citing *Nixon v.*

*Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985)).

### The "Sales Representatives" Statute

In its third and fourth issues, MSI contends that the trial court erred in granting summary judgment to HTT based on section 35.81, *et seq.* of the Texas Business and Commerce Code. This statute, entitled "Sales Representatives," governs contracts between "principals" and "sales representatives" as well as obligations for payment of commissions in the absence of a contract. *See* Tex. Bus. & Com.Code Ann. §§ 35.82–35.83 (Vernon Supp.1999). The statute not only prescribes the basic obligations of the principal but also sets forth the measure of damages for a principal's failure to pay commissions required by a contract or to otherwise comply with a contract's terms. *See* § 35.84. In the trial court, HTT asserted that because the contract between HTT and MSI was not in writing, it was not enforceable under this statute. In its third issue, MSI argues that the statute does not provide an affirmative defense to HTT as a "principal" because it was the legislature's intent in enacting the statute to provide protection to sales representatives and not to principals like HTT. Alternatively, in the fourth issue, MSI argues that a material question of fact exists as to whether MSI is a "sales representative" as that term is defined in the statute.

Notably, MSI did not bring a cause of action under the "Sales Representatives" statute nor did MSI seek to recover the statutory damages it provides. In fact, MSI maintains that it is not a "sales representative" as defined in the statute. If MSI had asserted a claim for affirmative relief under this statute, then it would have had to have established the statutory elements. Under that scenario, HTT, as a

defendant, could have challenged MSI's claim by proving MSI's inability to establish at least one element of a *prima facie* case for recovery under the statute. MSI, however, made no such claim nor did it seek to invoke this statute as a basis for obtaining affirmative relief. Rather, it was HTT that introduced this statute into the litigation, seeking to use it as an affirmative defense to MSI's common law claim for breach of contract.

HTT's argument is based on the faulty premise that the statute bars the recovery of commissions due under agreements that are not reduced to writing. This notion is belied by the plain language of the statute [1], which allows a sales representative to recover commissions *regardless* of whether the agreement is written or unwritten. Section 35.82 requires any "contract between a principal and a sales representative under which the sales representative is to solicit wholesale orders within this state" to be in *writing* or in a computer based medium and "to set forth the method by which the sales representative's commission is to be computed and paid;" [2] however, section 35.83 expressly requires the principal to *"pay all commissions due the sales representative* within thirty working days after the date of the termination"* when an agreement that does *not* comply with section 35.82 is terminated. *See* § 35.83 (emphasis added). The latter provision clearly encompasses *unwritten* agreements. Thus, the plain wording of the statute directly refutes HTT's contention that recovery of commissions is barred when the contract is not in writing.

In considering the merit of MSI's argument that HTT was not entitled to rely on the "Sales Representatives" statute as an affirmative defense, we note that

---

**1.** When a statute is clear and unambiguous, the statute must be given its common meaning. *See St. Luke's Episcopal Hospital v. Agbor,* 952 S.W.2d 503, 505 (Tex.1997). We determine the intent of the legislature from the plain meaning of the words and do not

resort to rules of construction or extrinsic aids. *See id.*

**2.** Tex. Bus. & Com.Code Ann § 35.82 (Vernon Supp.1999) (emphasis added).

several provisions of the statute afford protection to the sales representative while placing specific duties and obligations on the principal. This statutory framework strongly suggests a legislative intent to provide protection to the sales representative, not an affirmative defense to the principal. For example, section 35.82 makes it the principal's responsibility to provide the sales representative with a copy of the contract. *See* § 35.82. Section 35.84 subjects a principal who fails to pay a commission as required by section 35.83 to liability in a civil action for three times the damages sustained by the sales representative, plus reasonable attorneys' fees and costs. *See* § 35.84. The statute not only prohibits waiver of these statutory protections afforded to the sales representative, but also deems any attempted waiver void. *See* § 35.86.

■ Based on the plain reading of its terms and provisions, we find that this legislation, as its name suggests, was clearly enacted to protect the sales representative and not to provide an affirmative defense to the principal.[3] Therefore, HTT was not entitled to rely on the "Sales Representatives" statute as an affirmative defense to MSI's common law breach of contract claim nor was HTT entitled to a summary judgment based upon section 35.81 or its related provisions.[4]

### STATUTE OF FRAUDS

■ In its fifth and sixth issues, MSI contends the trial court erred in granting summary judgment to HTT based on the Texas statute of frauds. MSI first argues that HTT failed to prove all the elements of the statute of frauds. Alternatively,

MSI contends that HTT was estopped from asserting the statute of frauds as an affirmative defense.

■ The Texas statute of frauds provides that "an agreement which is not to be performed within one year from the making of the agreement" is not enforceable unless it is in writing and signed by the party obligated to perform. TEX. BUS. & COM.CODE ANN. § 26.01 (Vernon 1987). Before deciding whether HTT proved all the elements of the statute of frauds necessary to demonstrate its entitlement to summary judgment, we must first determine, as a threshold matter, whether the statute of frauds applies to the agreement in question. The application of the statute of frauds to a given contract is a question of law. *See Krueger v. Young,* 406 S.W.2d 751, 756 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.).

■ The statute of frauds does not apply when "the parties do not fix the time of performance and the agreement itself does not indicate that it cannot be performed within one year." *Niday v. Niday,* 643 S.W.2d 919, 920 (Tex.1982). Conversely, when, either because of the agreement's terms or the nature of the required acts, the agreement cannot be performed within one year, the statute of frauds applies and renders any non-complying agreement unenforceable. *See id.* Therefore, where parties enter into a contract without explicitly mentioning a time for performance, we must determine whether the parties intended to complete the contract within a year. *See Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 16 (1957). In making this determination, we frame our inquiry in terms of what is a "reasonable

---

**3.** MSI also argues that sections 35.82–35.84 violate the United States Constitution and, therefore, HTT's affirmative defense fails as a matter of law. We do not reach constitutional issues if the matter can be resolved on another basis. *See Allen v. Mauro,* 733 S.W.2d 228, 230 (Tex.App.—El Paso 1986, writ ref'd n.r.e.) (citing *Horton v. Horton,* 625 S.W.2d 78 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.)). Having ruled that HTT's affir-

mative defense under section 35.81, *et seq.* fails on another basis, we do not reach the constitutionality of the statute.

**4.** Having found that HTT was not entitled to summary judgment as a matter of law under section 35.81, *et seq.,* we do not reach the fourth issue, i.e., whether a material fact question exists.

time" to complete performance of the contract measured in days or years "in light of the circumstances before [the parties] at the date of the contract." *Id.* We imply a "reasonable time" from all the circumstances surrounding the adoption of the agreement, the situation of the parties, and the subject matter of the contract. *See Krueger,* 406 S.W.2d at 756. What constitutes a "reasonable time" to complete performance depends on the facts of the case.[5] Facts arising after the formation of the contract may not be considered in determining what constitutes a reasonable time for completion of performance. *See Hall,* 308 S.W.2d at 17; *Gerstacker v. Blum Consulting Engineers, Inc.,* 884 S.W.2d 845, 850 (Tex.App.—Dallas 1994, writ denied).

 If the extrinsic evidence conclusively shows the agreement cannot be completed within one year, the agreement falls within the statute of frauds as a matter of law. *See Niday,* 643 S.W.2d at 920. In such cases, summary judgment is proper. If, however, the extrinsic evidence is disputed as to whether the agreement can be completed within one year, what constitutes a reasonable time is a question of fact, which precludes summary judgment.

*See Hall,* 308 S.W.2d at 17; *Adams v. Big Three Industries, Inc.,* 549 S.W.2d 411, 415 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

Here, neither party addressed in the lower court or briefed on appeal what constitutes a reasonable time for performance of their business referral agreement. As the summary judgment movant asserting that the statute of frauds barred MSI's claims, HTT was required to prove that it was entitled to summary judgment as a matter of law. The only evidence HTT produced that arguably addresses the issue of a "reasonable time" for completion of performance of the agreement are facts arising *after* the contract was formed.[6] The court may not consider this evidence. *See Hall,* 308 S.W.2d at 17; *Gerstacker,* 884 S.W.2d at 850. Lacking any extrinsic evidence bearing on the issue of a "reasonable time" for completion of performance, the trial court could not have determined that the statute of frauds applied to the business referral agreement, much less found that the agreement violates the statute. Therefore, we find that HTT was not entitled to summary judgment based on the statute of frauds.[7]

---

**5.** *See, e.g., Gerstacker v. Blum Consulting Engineers, Inc.,* 884 S.W.2d 845 (Tex.App.—Dallas 1994, writ denied) (finding a "reasonable time" did not necessarily exceed a year when the only extrinsic evidence on "reasonable time" showed the amount of time was measured in quality of performance and not months and years); *Goodyear Tire & Rubber Co. v. Portilla,* 836 S.W.2d 664 (Tex.App.—Corpus Christi 1992), *aff'd,* 879 S.W.2d 47 (Tex.1994) (finding a "reasonable time" did not necessarily exceed one year when the agreement depended on satisfaction); *International Piping Systems, Ltd. v. M.M. White & Assoc., Inc.,* 831 S.W.2d 444 (Tex.App.—Houston [14th Dist.] 1992, writ denied) (finding the agreement was for one year and the obligations were performable within one year when a sales representative was to market the services of appellee in a certain territory for a ten percent commission); *Gano v. Jamail,* 678 S.W.2d 152 (Tex.App.—Houston [14th Dist.] 1984, no writ) (finding a "reasonable time" exceeded a year when the agreement was

between law partners in a firm involved almost exclusively in a personal injury practice in which cases are based on contingent fee contracts and cases almost always take more than a year to conclude); *Krueger v. Young,* 406 S.W.2d 751 (Tex.Civ.App.—Eastland 1966, writ ref'd n.r.e.) (finding a "reasonable time" exceeded a year when appellant was required to help in planning, developing, and successfully completing an integrated gas pipeline which would clearly take more than a year).

**6.** HTT argues that "[a]ll of the invoices are more than a year after the oral agreement in January 1994," and therefore, as a matter of law, "performance could not be completed within one year."

**7.** Having found HTT was not entitled to summary judgment as a matter of law under the statute of frauds, we do not reach the sixth issue, i.e., whether HTT is estopped from asserting the statute of frauds.

## ACCORD AND SATISFACTION

MSI contends the trial court erred in granting summary judgment based on the affirmative defense of accord and satisfaction. In the first issue, MSI argues that its acceptance of HTT's check as "partial payment" preempts the common law defense of accord and satisfaction. Alternatively, in the second issue, MSI argues that a material question of fact exists as to whether its acceptance of the check constituted satisfaction as to all twenty-three or more outstanding invoices or only as to the three invoices specifically listed on the check.

### Preemption of Accord and Satisfaction

An accord and satisfaction occurs "when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original contract." *Smith–Hamm, Inc. v. Equipment Connection,* 946 S.W.2d 458, 462 (Tex.App.—Houston [14th Dist.] 1997, no writ). The "accord" is the new agreement and the "satisfaction" is the discharge of the obligation. To establish this defense, the evidence must show both parties agreed that the amount paid by the debtor to the creditor fully satisfied the entire claim. *See Jenkins v. Henry C. Beck Co.,* 449 S.W.2d 454, 455 (Tex.1969). To repudiate a transaction that purports to fully satisfy a claim, a creditor must return the tendered draft. *See Pileco, Inc. v. HCI, Inc.,* 735 S.W.2d 561, 562 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.). The creditor cannot strike the debtor's conditions from the face of the instrument or insert his own provision that the check is partial payment and accepted "without

prejudice" or "under protest." *See id.* at 563; *Hixson v. Cox,* 633 S.W.2d 330, 332 (Tex.App.-Dallas 1982, writ ref'd n.r.e.).

The check HTT tendered to MSI contained the following notation:

| DATE | INVOICE | AMOUNT | |
|---|---|---|---|
| 04/27/95 | 3403 | 41.27 | 41.27 |
| 06/01/95 | 4698 | 226.54 | 226.54 |
| 03/01/95 | 948 | 2127.59 | 2127.59 |

FINAL PAYMENT FOR COMMISSIONS FOR EJR LESS DEDUCTIONS

Before cashing the check, MSI endorsed it with the notation, "Accepted as Partial Payment." Because MSI did not return the tendered draft, it did not repudiate the transaction as fully satisfying MSI's claim for EJR commissions. More importantly, MSI's conditional acceptance of HTT's payment did not operate to negate any condition imposed by HTT. Accordingly, MSI's acceptance of the check as "partial payment" would not preclude HTT's assertion of the defense of accord and satisfaction under Texas common law.

MSI argues that section 1.207 of the Texas Business and Commerce Code preempts the common law doctrine of accord and satisfaction. This section provides that "a party who with explicit reservation of rights performs or promises performance or assents to performance in a manner demanded or offered by the other party does not thereby prejudice the rights reserved." TEX. BUS. & COM.CODE ANN. § 1.207(a) (Vernon Supp.1999).[8] Until recently, there was a split among Texas intermediate appellate courts as to whether this provision preempted the common law doctrine of accord and satisfaction. The majority of courts of appeals addressing the issue found that section 1.207 did not preempt the common law[9] while at

---

**8.** The revision, which became effective on January 1, 1996, did not change this subsection.

**9.** *See Pileco, Inc. v. HCI, Inc.,* 735 S.W.2d 561 (Tex.App.-Houston [1st Dist.] 1987, writ ref'd n.r.e.) (holding accord and satisfaction barred recovery where plaintiff on a sworn account negotiated full payment check after adding protest language to the instrument); *Hixson v. Cox,* 633 S.W.2d 330 (Tex.App.—Dallas 1982, writ ref'd n.r.e.) (holding accord and satisfaction barred recovery where provider of services cashed a check tendered in full payment after striking the maker's restrictive indorsement and inserting a notation indicating the check was being accepted as partial payment only).

least one court found that it did.[10] To resolve the conflict, the Texas legislature revised section 1.207 to specifically state that it does *not* apply to accord and satisfaction, thus rejecting the minority view that section 1.207 preempts this common law defense. *See* § 1.207(b) & comment. Although the legislature did not make this revision until after the dispute in this case arose, we hold that the view espoused by the majority of courts in favor of non-preemption was the correct reasoning until the statutory revision on January 1, 1996. Accordingly, we find that HTT's assertion of the common law defense of accord and satisfaction was not preempted. We overrule the first issue.

### Accord and Satisfaction as a Matter of Law

■ Having determined that MSI's acceptance of the check as "partial payment" did not preempt the defense of accord and satisfaction, we now address whether a material fact question exists as to whether the check satisfied commissions due from *all* EJR invoices or *only* the three listed on the check, i.e., whether HTT established its defense of accord and satisfaction as a matter of law. In determining whether MSI's acceptance of the check constituted satisfaction as to *all* claims MSI had against HTT, we consider whether there was an "unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation." *Jenkins*, 449 S.W.2d at 455 (citation omitted). The condition must be plain, definite, and certain; it must also be so clear, full, and explicit as to not be susceptible to any other interpretation. *See id.*

We find the notation HTT made on the check is not so clear, full and explicit as to be susceptible to no interpretation other

than accord and satisfaction of all outstanding invoices. The check stub listed three invoice numbers and the amount to be paid on each invoice. Underneath the invoice numbers, a handwritten notation reads "[f]inal payment for commissions for EJR less deductions." The check totaled $2,395.40. An affidavit from the president of MSI averred that the aggregate of the three invoices exceeded that amount. Neither the check, nor any other document sent with the check, made any reference to the twenty-three other invoices. HTT posits that it tendered the check and MSI accepted it as full payment of *all* outstanding invoices. However, another reasonable interpretation of these facts would be that the check was intended as full payment of the three invoices listed on the check stub. Because the notation is susceptible to more than one reasonable interpretation, a fact question exists as to whether MSI's acceptance of the check constituted satisfaction of HTT's obligations on *all* outstanding invoices or only on the three invoices listed on the check stub. Having concluded there is a genuine issue of material fact, we find that HTT was not entitled to summary judgment based on its accord and satisfaction defense. Accordingly, we sustain the second issue.

### CONCLUSION

HTT, as movant, failed to carry its burden to show that it was entitled to summary judgment as a matter of law on its affirmative defenses. For the reasons set forth above, we reverse the judgment of the trial court and remand this case for further proceedings.

---

**10.** *See Robinson v. Garcia,* 804 S.W.2d 238, 247 (Tex.App.—Corpus Christi), *writ denied,* 817 S.W.2d 59 (Tex.1991) (per curiam) (holding no accord and satisfaction resulted when a lawyer's clients cashed a check tendered in full settlement of fee dispute after adding an exception to the restrictive indorsement on the check).