# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-08-00331-CR

**Charles O'Dell, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 1 OF HAYS COUNTY, NO. 86992, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

### M E M O R A N D U M   O P I N I O N

Charles O'Dell was convicted of installing a sign in violation of an ordinance passed by the City of Dripping Springs ("City"). On appeal, O'Dell challenges the sufficiency of the evidence supporting his conviction and asserts that the ordinance is unconstitutional. We will reverse O'Dell's conviction and render a judgment of acquittal.

### BACKGROUND

In February 2007, O'Dell was charged by complaint of violating the City's Sign Ordinance. *See* Dripping Springs, Tex., Ordinance No. 1250.17 (June 10, 2003). That ordinance regulates the type and quantity of signs that may be installed within the City and the manner in which the signs may be displayed. *Id.* Restrictions relevant to this case state that, with certain exceptions, signs must not be placed within eight feet of a roadway and that an individual seeking to install certain types of signs must obtain a permit from the City. *Id.* §§ VI(B), VII. In addition to the

general restrictions, the ordinance provides a list of permissible signs and states that any sign not listed "is prohibited." *Id.* § V.

The complaint alleged that on February 10, 2007, O'Dell violated the Sign Ordinance by unlawfully installing "a multi-sectional sign reading at the top: 'FACT RACK'" "near . . . the entrance to" a subdivision "within the public street right-of-way and/or without obtaining a sign permit." O'Dell pleaded not guilty to the allegations, and a bench trial was held before the City's municipal court. The municipal court found O'Dell guilty and imposed a $500 fine. O'Dell appealed that determination to the county court at law, and the county court conducted a trial de novo.

During the trial before the county court, witnesses testified regarding events that occurred on the date listed in the complaint and regarding events occurring before and after that date. Regarding the date of the alleged offense, Billy Eubanks, an inspector for the City, testified that he saw O'Dell installing "a sign" or "a group of signs" "[i]n the public right-of-way of" a neighborhood subdivision. Further, Eubanks testified that O'Dell's actions violated the Sign Ordinance because that ordinance prohibits installing signs in a roadway. In addition, Eubanks testified that he took a photograph of O'Dell setting up a sign. That photo was admitted and shows a man kneeling down while installing a sign in a grass area along the edge of a roadway that is used for entering and exiting a neighborhood. The words on the sign are not decipherable.

Furthermore, Eubanks testified that he left the area shortly after taking the photo of O'Dell but came back to the neighborhood entrance a few hours later. Moreover, Eubanks stated that when he returned to the area, he noticed that several signs had been set up and took a photo of the signs. That photo was also admitted. The photo shows approximately ten signs located in the

2

same general area depicted in the first photo. One of those signs has the phrase "FACT RACK" written along the top of it. The FACT RACK sign is larger than most of the other signs and appears to be an amalgamation of several smaller signs. However, other than the phrase "FACT RACK," none of the other words written on the sign can be read. Although it is clear from the photo that all of the other signs have writing on them, only the content of two of the additional signs can be ascertained. The messages contained in those signs pertain to an environmental issue. In particular, the two signs read as follows: "Keep our Hill Country creeks clear say no to direct discharge" and "save our wells."

Eubanks also testified regarding events occurring prior to February 10. In particular, Eubanks stated that approximately one month prior to the date at issue in this case, he had observed O'Dell installing other signs in the same roadway. Eubanks did not describe the signs or what, if anything, was written on them. Further, Eubanks stated that after noticing the installation of the signs, he informed O'Dell that he was not allowed to set up signs that close to a roadway.

Similarly, Blaine Hamilton, a deputy constable, also provided testimony regarding prior allegations that O'Dell had violated the Sign Ordinance. In particular, he stated that in the course of his duties, he personally executed service of process on O'Dell for a violation of the Sign Ordinance allegedly occurring several months before the date at issue in this case. A copy of the process document was admitted, and the affidavit accompanying the document alleged that O'Dell had violated the Sign Ordinance on October 21, 2006, by unlawfully placing three signs "within [a] street right of way and/or not obtaining sign(s) permit(s)" in the same location at issue in this case. The affidavit describes the shapes of the three signs and states that two of the signs contained messages objecting to the direct discharge of sewage into creeks.

The final witness to testify was Michelle Fischer, an administrator for the City. During her testimony, she described O'Dell's prior involvement in City council meetings and also discussed the purpose of the Sign Ordinance. While she was giving her testimony, the State introduced an email sent by O'Dell approximately two weeks after the date at issue in this case. The email was sent to an environmental group list serve and explained various developments in Hays County and also communicated the fact that O'Dell had pleaded not guilty to violating the Sign Ordinance in this case. In addition, the email stated that O'Dell and at least two other individuals held a "public educational demonstration" at which they asked neighborhood residents to sign a petition "opposing direct discharge into Bear Creek." Finally, in the email, O'Dell mentioned a future demonstration and requested that as many recipients as possible attend the upcoming event in order to convey a strong message. In light of that event, O'Dell also stated that although the Sign Ordinance would likely prohibit the members from installing signs near the roadway, the ordinance would not prohibit them from physically holding their signs near the roadway.[1] Specifically, O'Dell wrote that "[t]he prosecutor seemed to indicate that it was OK to hold *our* signs, so the more citizens who come and help . . . the more signs *we* can hold to convey *our* message." (Emphasis added).

After the trial concluded, the county court found O'Dell guilty of violating the Sign Ordinance and imposed a $500 fine. O'Dell appeals the county court's judgment.

---

[1] During Fischer's testimony, the State also introduced an email sent by O'Dell to a City employee on February 9, 2007, which was the day before O'Dell allegedly installed the sign at issue in this case. In that email, O'Dell asked for a copy of the Sign Ordinance.

**DISCUSSION**

O'Dell raises three issues on appeal. In his first two issues, O'Dell argues that the evidence is legally and factually insufficient to support his conviction. In his final issue, O'Dell contends that the Sign Ordinance is facially unconstitutional.[2] Because we conclude that the evidence is legally insufficient, we do not reach O'Dell's other issues on appeal. *See Metromarketing Servs., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 195 n.3 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (explaining that courts should not reach constitutional claims when case may be decided on different grounds).

*The Evidence is Legally Insufficient*

To satisfy constitutional requirements, an accused may only be found guilty of a crime when proof beyond a reasonable doubt for each element necessary to convict is introduced. *Hall v. State*, 86 S.W.3d 235, 240 (Tex. App.—Austin 2002, pet. ref'd); *see In re Winship*, 397 U.S. 358, 364 (1970). The trier of fact is entitled to resolve conflicts in the evidence presented, to assess the credibility of witnesses, and to decide what weight to give the evidence that is introduced. *Hall*, 86 S.W.3d at 240. Moreover, the trier of fact is permitted to make reasonable inferences from the evidence presented at trial. *See Roberts v. State*, 273 S.W.3d 322, 326-27 (Tex. Crim. App. 2008). When determining whether the evidence presented is legally sufficient to support the conviction, appellate courts consider all of the evidence admitted, *Hall*, 86 S.W.3d at 240, and view the evidence in the light most favorable to the verdict, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). After

---

[2] In his brief, O'Dell also argued that the Sign Ordinance was unconstitutional as applied to him. During oral argument, O'Dell conceded that the as-applied challenge was not properly preserved for appellate review.

reviewing the evidence, the court must decide whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.*

Although not every fact introduced has to support the defendant's guilt, the cumulative effect of all of the incriminating evidence must support the conviction. *See Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *see also Muttoni v. State*, 25 S.W.3d 300, 308 (Tex. App.—Austin 2000, no pet.) (explaining that circumstantial evidence is reviewed in same manner as direct evidence). In addition, the evidence may be legally sufficient despite the need for making multiple reasonable inferences to support the conviction as long as "each inference is supported by the evidence presented at trial." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). In other words, a reviewing court must determine whether the necessary inferences are reasonable in light of the "combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* at 16-17.

Proper convictions require proof beyond a reasonable doubt, and if after reviewing all of the evidence, an appellate court concludes that a "rational" trier of fact "would necessarily entertain a reasonable doubt as to the defendant's guilt," due process requires the court to reverse and order a judgment of acquittal. *Swearingen v. State*, 101 S.W.3d 89, 95 (Tex. Crim. App. 2003). While reasonable inferences are permissible, a guilty verdict may not be based on mere speculation, which amounts to nothing more than simply "theorizing or guessing about the possible meaning of facts and evidence presented." *Hooper*, 214 S.W.3d at 16. A conclusion reached by speculation might seem plausible, but the absence of a sufficient evidentiary basis to support that type of finding does not satisfy the beyond-a-reasonable-doubt requirement. *Id.*

Regardless of whether O'Dell's conviction was for installing a sign too close to a roadway or for installing a sign without a valid permit, in order for the conviction to be proper, the

6

trier of fact must have found beyond a reasonable doubt that O'Dell was the individual that installed the FACT RACK sign.

When viewed in the light most favorable to the verdict, the evidence demonstrates that several signs, including the FACT RACK sign, were installed at the entrance to the subdivision at issue in this case. In addition, the evidence shows that on the day in question O'Dell installed one or more signs at the entrance of the subdivision and that the sign or signs were near a roadway. The evidence also indicates that O'Dell had previously installed other signs in the same general area and that he was planning to attend an event in that same location in which individuals would be holding signs with messages pertaining to an environmental issue. Finally, the evidence shows that O'Dell was a member of an environmental group and that two of the signs shown in the second picture taken by Eubanks displayed messages that were consistent with the group's stance on a particular environmental issue.

However, the evidence does not directly support a determination that O'Dell violated the Sign Ordinance by installing the FACT RACK sign. During his testimony, Eubanks never mentioned that he saw O'Dell in possession of a sign with the phrase "FACT RACK" written on it and never stated that he saw O'Dell install or attempt to install the FACT RACK sign. Additionally, the photo taken of the subdivision entrance after the FACT RACK sign had been installed does not contain an image of O'Dell, and Eubanks did not testify that he saw O'Dell in the area at the time he took that photo.

Furthermore, the evidence presented does not allow for a reasonable inference that O'Dell installed the FACT RACK sign. First, neither Eubanks's testimony nor the photographs admitted into evidence negated or addressed the possibility that another individual could have

7

installed the FACT RACK sign. Eubanks admitted that on the day in question he only observed O'Dell for a few minutes and did not remember if anyone else was installing signs. Moreover, Eubanks testified that he left the area right after taking the photo of O'Dell setting up a sign, that he did not see O'Dell handle or install any additional signs after taking that photo, and that there was a significant lapse in time between when he took the first photo and when he returned to the area and saw that the FACT RACK sign had been set up. Additionally, Eubanks did not testify whether he saw anyone in the area at the time the second photo was taken, and no evidence was introduced regarding whether other people were placing political signs in the area around the time that the FACT RACK sign had been installed. Furthermore, the evidence presented indicated that other members of the environmental group were also active in conveying a message similar to what was captured in Eubanks's photo and that other members of the group also utilized signs.

Second, no evidence was introduced that linked O'Dell or the sign that O'Dell was seen setting up to the FACT RACK sign. Although Eubanks's testimony and the first photo demonstrate that O'Dell did install at least one sign in the area, no testimony was introduced stating that the sign O'Dell was seen installing bore any similarity to the FACT RACK sign. Moreover, although the second photo shows that some of the other signs are similar to each other in size and color, the photo also shows that the FACT RACK sign's composite design distinguishes it from all of the other signs.[3] In addition, although the second photo shows that two of the signs installed in the area communicate similar messages and that those messages appear to be consistent with the opinions expressed by O'Dell, no evidence was introduced regarding whether the messages written

---

[3] It is worth noting that the messages on the similar-looking signs, although mostly unreadable, appear to be of different lengths and appear to contain different phraseology.

on the other signs, including the FACT RACK sign, were consistent with, contradictory to, or irrelevant to that environmental message. In fact, as mentioned previously, the message contained in the FACT RACK sign cannot be deciphered from the second photo.

In light of the preceding, we must conclude that a reasonable trier of fact could not determine beyond a reasonable doubt that O'Dell had installed the FACT RACK sign. Although there is evidence that O'Dell did install at least one sign in the area on the day in question and had previously placed other signs in the area, the leap from that evidence to a determination that O'Dell was the person who installed the sign specifically identified in the complaint is not adequately supported by the evidence presented in this case. While it is not unreasonable to theorize or guess that O'Dell set up the sign, that conclusion is merely speculative in nature and cannot support a finding of guilt beyond a reasonable doubt. Accordingly, we conclude that the evidence is legally insufficient to support O'Dell's conviction and sustain his first issue on appeal.

## CONCLUSION

Having sustained O'Dell's first issue on appeal, we reverse the judgment of the county court and render a judgment of acquittal.

 

_____

David Puryear, Justice

Before Chief Justice Jones and Justices Puryear and Henson

Reversed and Acquittal Rendered

Filed: June 19, 2009

Do Not Publish