Rhonda **AVARY, Guardian of the Estates of Brett Joseph Bourgeois and Timothy James Bourgeois, Minor Children, Appellant,**

v.

**BANK OF AMERICA, N.A., Appellee.**

No. 05–00–00918–CV.

Court of Appeals of Texas, Dallas.

March 22, 2002.

Rehearing Overruled May 6, 2002.

Charles W. McGarry, Thurman & Andres, P.C., Dallas, for appellant.

Talmage Boston, Winstead, Secrest & Minick, P.C., Dallas, for appellee.

Before Justices MORRIS, WHITTINGTON, and O'NEILL.

## OPINION

Opinion By Justice WHITTINGTON.

Rhonda Avary, guardian of the estates of Brett Joseph Bourgeois and Timothy James Bourgeois, minor children (Avary), sued Bank of America, N.A. (Bank) for breach of fiduciary duty, negligence, fraud, and conspiracy. The alleged wrongful conduct occurred during the court-ordered mediation of a now-concluded lawsuit. The Bank moved for summary judgment on the ground that Avary had no evidence to support her claims because all communications made at the mediation were confidential under section 154.073 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 154.073 (Vernon Supp.2002). The Bank's motion also raised the affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel. After permitting limited discovery, the trial judge granted the Bank's motion. In three issues, Avary complains the trial judge erred in granting the Bank's motion for summary judgment and abused his discretion in prohibiting certain discovery relating to the mediation session. Because we find more than a scintilla of evidence to support Avary's claims, and because the trial judge abused his discretion in restricting discovery regarding the new and independent tort alleged to have occurred during the mediation, we reverse the trial court's judgment and remand this case for further proceedings.

FACTUAL BACKGROUND

Joseph Bourgeois was killed when a tractor rolled over on him. He was survived by his parents, his wife Nursen Bourgeois, and three sons, one by his marriage to Nursen and two by a previous marriage to Rhonda Avary. The Bank is the independent executor of Bourgeois's estate.

Bourgeois's wife, parents, sons, and estate filed wrongful death and survival claims against the manufacturer of the tractor and other parties in a lawsuit styled *Nursen Bourgeois, et al. v. Yanmar*

*Diesel Engine Co., Ltd., et al.*, Cause Number 219–232–98 in the 219th Judicial District Court of Collin County, Texas (the *Yanmar Diesel* lawsuit). The parties to the *Yanmar Diesel* lawsuit participated in a court-ordered mediation.

In the course of the mediation, the parties were divided into three groups. The defendants, including the tractor manufacturer, were in one room. Avary, as guardian of the estates of Brett and Timothy, was in a second room with her counsel. All other plaintiffs, including the Bank as executor, were in a third room with their counsel. Avary was represented at the mediation by Thomas M. McCrory, III and Shirley Sutherland. The remaining plaintiffs, including the Bank as executor of the estate, were represented by Marty L. Matthews and Steve Cowan. Eileen Kirchner, a trust officer, participated in the mediation as the Bank's representative. The defendants were represented by R. Douglas Noah, Jr.

The *Yanmar Diesel* lawsuit was settled at the mediation. There were two subsequent hearings to approve the settlement, one in the county court where Bourgeois's estate was pending, and one in the district court where the *Yanmar Diesel* lawsuit was filed. Both courts approved the settlement. Avary, with her counsel, appeared and testified at the district court hearing. Although provided notice, neither Avary nor her counsel appeared at the county court hearing. At neither hearing did Avary offer any objection to the settlement. Avary does not allege that she did not receive her designated portion of the settlement funds.

In this lawsuit, Avary contends that at the mediation, the defendants in the *Yanmar Diesel* lawsuit made a settlement offer of $450,000 to Bourgeois's estate. This offer was allegedly made to the estate alone, separate from the other plaintiffs.

Kirchner, the Bank's representative, allegedly left the mediation before the $450,000 offer was made; the parties hotly dispute whether Kirchner delegated to the estate's attorneys the Bank's responsibility to represent the estate. Avary further contends the Bank (representing the estate) rejected this offer, "but offered instead to accept the money . . . as part of a larger aggregate (lump-sum)" for all of the plaintiffs except Avary, to be allocated among those plaintiffs as they so decided. Avary alleges the Bourgeois estate actually received $75,000 in the settlement as a result of this allocation among the other plaintiffs. The estate's tax liability was over $185,000, which allegedly had to be paid from proceeds of life insurance policies of which Bourgeois's sons were the beneficiaries. Avary claims the rejection of the $450,000 offer and the acceptance of a smaller allocation was a breach of the Bank's fiduciary duty as executor of the estate.

After filing the lawsuit, Avary proceeded to serve discovery requests on the Bank. The Bank objected to many of these requests, and the parties filed various motions to compel and for protective orders. The trial judge issued four orders on these motions.

The first order required the Bank to respond to two of Avary's requests for admission regarding whether or not the parties were in separate rooms at the mediation. The Bank was not required, however, to respond to requests for admission directed to the settlement offers made, the presence or absence of Kirchner at the mediation, and Kirchner's alleged delegation of authority at the mediation.

The second order denied Avary's request to depose and obtain documents from Noah, the defense attorney in the wrongful death lawsuit, regarding matters occurring during mediation.

The third order, regarding Kirchner's deposition, was issued after the trial judge heard testimony from Kirchner *in camera*. The trial judge ordered that Kirchner's *in camera* testimony should be disclosed to Avary, "and that no objection based upon confidentiality or privilege under Civil Practice & Remedies Code § 154.073 is proper so as to prevent the admissibility of such testimony upon trial or hearing in this cause."

The fourth order denied Avary's request to depose Sutherland, one of the attorneys representing Avary at the mediation. The trial judge also ordered "that Plaintiff not attempt to obtain discovery from *any* persons (other than Defendant's representative Eileen Kirchner) regarding what occurred" at the mediation. (Emphasis added).

All the trial judge's orders appear to be founded upon the confidentiality provisions of section 154.073. The fourth order expressly cites the statute. The second and third orders explicitly deny discovery of "communications or conduct" which took place at the mediation. The first order does not specify a basis for the trial judge's ruling, but the Bank objected to the requested discovery of mediation communications on the grounds that Avary sought "privileged and confidential information."

The Bank moved for summary judgment on all of Avary's claims, claiming (i) there was no evidence of breach of fiduciary duty, negligence, or conspiracy to defraud, because each claim arose "out of confidential and inadmissible statements purportedly made at Mediation;" and (ii) the Bank established its affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel. The trial judge granted the Bank's motion without specifying the grounds.

Avary now appeals the grant of summary judgment. In three issues, Avary argues the trial judge erred in (i) granting summary judgment; (ii) ordering witnesses not to testify about what occurred in the mediation; and (iii) denying Avary's request for discovery about what occurred during the mediation.

## STANDARD OF REVIEW

The standard of review in summary judgment is well-established. *See* Tex.R. Civ. P. 166a(c); *Black v. Victoria Lloyds Ins. Co.*, 797 S.W.2d 20, 23 (Tex.1990). In reviewing a summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). Every reasonable inference in favor of the nonmovant is allowed, and all doubts are resolved in his favor. *Nixon*, 690 S.W.2d at 548–49.

To prevail on summary judgment, a defendant as movant must either disprove at least one element of each of the plaintiff's theories of recovery or plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex.1979); *Hoover v. Gregory*, 835 S.W.2d 668, 671 (Tex.App.—Dallas 1992, writ denied). A matter is conclusively established if ordinary minds could not differ as to the conclusion to be drawn from the evidence. *See Triton Oil & Gas Corp. v. Marine Contractors & Supply, Inc.*, 644 S.W.2d 443, 446 (Tex. 1982).

Although not so designated, the parties treat the Bank's request for summary judgment on Avary's affirmative claims as a "no-evidence" motion under rule 166a(i) of the Texas Rules of Civil Procedure. A no-evidence summary judgment motion may be urged on the ground

that there is no evidence of one or more essential elements of a claim or defense on which the adverse party would have the burden of proof at trial. *See Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 682–83 (Tex.App.—Dallas 2000, no pet.). A no-evidence motion for summary judgment places the burden on the nonmovant to present summary judgment evidence raising a genuine fact issue. *See Espalin*, 27 S.W.3d at 683.

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.*, 12 S.W.3d 827, 832–33 (Tex.App.—Dallas 2000, no pet.). Thus, we must determine whether the nonmovant produced any evidence of probative force to raise a fact issue on the material questions presented. *Gen. Mills*, 12 S.W.3d at 833. A trial judge improperly grants a no-evidence summary judgment if the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact. *Gen. Mills*, 12 S.W.3d at 833. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Espalin*, 27 S.W.3d at 683 (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)); *Gen. Mills*, 12 S.W.3d at 833. When analyzing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *See Nixon*, 690 S.W.2d at 549 (traditional summary judgment); *Gen. Mills*, 12 S.W.3d at 833 (no-evidence summary judgment).

█ Finally, we review the trial judge's discovery rulings under an abuse of discretion standard. *Oyster Creek Fin. Corp. v. Richwood Inv. II, Inc.*, 957 S.W.2d 640, 646 (Tex.App.—Amarillo 1997,

pet. denied). "The scope of discovery and the admissibility of evidence is principally within the discretion of the trial judge." *Oyster Creek Fin. Corp.*, 957 S.W.2d at 646; *see also Helfand v. Coane*, 12 S.W.3d 152, 155 (Tex.App.—Houston [1st Dist.] 2000, pet. denied) (orders prohibiting discovery are reviewed under abuse of discretion standard). The trial court is allowed "great latitude" in its discovery orders. *Martinez v. Rutledge*, 592 S.W.2d 398, 399 (Tex.Civ.App.—Dallas 1979, writ ref'd n.r.e.). Unless there is a clear abuse of discretion, the trial judge's ruling should not be disturbed on appeal. *Oyster Creek Fin. Corp.*, 957 S.W.2d at 646. The purpose of discovery, however, is to allow the parties to obtain the fullest knowledge of facts and issues prior to trial. *West v. Solito*, 563 S.W.2d 240, 243 (Tex.1978). Orders prohibiting discovery may constitute an abuse of discretion. *See Helfand*, 12 S.W.3d at 155; *see also* Tex.R. Civ. P. 192.3, cmt. 7 ("A court abuses its discretion in unreasonably restricting a party's access to information through discovery.").

In reviewing a summary judgment in which the court has not provided the specific basis for its decision, we must review each argument asserted in the motion and affirm the trial court's judgment if any of the arguments are meritorious. *See Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995).

### Bank's Affirmative Defenses

█ The Bank sought summary judgment under rule 166a(c) on its affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel. Because the Bank, as summary judgment movant, was required to establish each element of these defenses as a matter of law, *Maxson v. Travis County Rent Account*, 21 S.W.3d 311, 315 (Tex.App.—Austin 1999, pet. dism'd by agr.), we first address whether

the Bank established any of its affirmative defenses as a matter of law. In the district court hearing to approve the settlement of the wrongful death and survival lawsuit, Avary testified the settlement reached at the mediation was "fair and reasonable." In its motion for summary judgment, the Bank argued that this testimony, and Avary's failure to appear at the hearing in the county court, established the Bank's affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel as a matter of law.

### Elements of Defenses

Waiver is the intentional relinquishment of a known right, or intentional conduct inconsistent with claiming that right. *Sun Exploration & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex.1987). Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act that did not then legally bind that person and which that person had the right to repudiate. *Lesikar v. Rappeport*, 33 S.W.3d 282, 300 (Tex. App.—Texarkana 2000, pet. denied). Ratification and waiver are largely a matter of intent. *Lesikar*, 33 S.W.3d at 300 (citing *Kennedy v. Bender*, 104 Tex. 149, 135 S.W. 524, 525 (1911)). There can be no waiver unless it is so intended by one party and so understood by the other. *Lesikar*, 33 S.W.3d at 300.

An accord and satisfaction occurs when parties agree to the discharge of an existing obligation in a manner other than in accordance with the terms of their original contract. *Metromarketing Serv., Inc. v. HTT Headwear, Ltd.*, 15 S.W.3d 190, 197 (Tex.App.—Houston [14th Dist.] 2000, no pet.). The "accord" is the new agreement and the "satisfaction" is the discharge of the obligation. *Metromarketing*, 15 S.W.3d at 197. To establish this defense, the evidence must show both parties agreed the amount paid by the debtor to the creditor fully satisfied the entire claim. *Metromarketing*, 15 S.W.3d at 197. In determining whether an accord and satisfaction has occurred, the question is whether there was an "unmistakable communication to the creditor that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation." *Metromarketing*, 15 S.W.3d at 198 (quoting *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969)). The condition must be so clear, full, and explicit as to not be susceptible to any other interpretation. *Metromarketing*, 15 S.W.3d at 198.

Estoppel arises where, by the fault of one, another is induced to change his or her position for the worse. *Herschbach v. City of Corpus Christi*, 883 S.W.2d 720, 736 (Tex.App.—Corpus Christi 1994, writ denied). The elements of an estoppel defense are (i) a false representation or concealment of material facts, (ii) made with knowledge, actual or constructive, of those facts, (iii) with the intention that it should be acted on, (iv) to a party without knowledge or means of obtaining knowledge of the facts, (v) who detrimentally relies on the representations. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 489 (Tex.1991).

### Application of Law to Facts

Although the Bank contends it met its burden of conclusively proving each of the essential elements of its accord and satisfaction, ratification, waiver, and estoppel defenses, we cannot agree.

At the district court hearing to approve the settlement, Avary testified she was the guardian of the estate of her two minor sons, who were plaintiffs in the wrongful death and survival lawsuit. She testified she was "in total accord" with the settlement "insofar as it affects Brett and Timo-

thy." She was asked whether she believed "that the settlement amount that was reached in mediation is a fair and reasonable amount for your minors." She answered "Yes." She further confirmed she understood "that this is all the money that you're ever going to receive on behalf of your boys *from these defendants.*" (Emphasis added). She testified she understood by making the settlement agreement, neither she nor her sons would "ever again be permitted to bring any kind of lawsuit to compensate them for the damages that they have suffered as a result of their father's death." Finally, she testified she understood she was "releasing all of the defendants that are named in that lawsuit."

Avary's testimony that the settlement was fair and reasonable does not conclusively establish the Bank's affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel. Rather, Avary's testimony reveals she understood she was settling her sons' wrongful death and survival claims against the tractor manufacturer and others (*not* including the Bank) relating to the death of Bourgeois, the boys' father. It does not demonstrate intent on her part to settle claims she might have against the Bank. Avary was not asked to testify regarding the reasonableness of the amount awarded to Bourgeois's estate, the Bank's handling of the settlement negotiations on behalf of the estate, any agreements she had with the Bank, or any potential claims she might have against the Bank.

 The Bank has not established intent on Avary's part to accept payment from the defendants in the *Yanmar Diesel* suit to satisfy an obligation owed to her sons by the Bank, as would be required to establish the defense of accord and satisfaction. The Bank must have made an "unmistakable communication ... that tender of the lesser sum is upon the condition that acceptance will constitute satisfaction of the underlying obligation." *Metromarketing,* 15 S.W.3d at 198. The condition must be "so clear, full, and explicit as to not be susceptible to any other interpretation." *Metromarketing,* 15 S.W.3d at 198. Avary testified she was accepting a lesser sum from the wrongful death defendants to satisfy their obligation to her sons; she said nothing of any obligation of the Bank.

 Regarding its estoppel defense, the Bank has not established as a matter of law it was without means of acquiring knowledge of facts misrepresented or concealed by Avary on which it relied to its detriment. The Bank has neither identified any false representation or concealment of material facts by Avary, nor alleged it had no knowledge or means of obtaining knowledge of any such misrepresentation or concealment.

 With respect to the waiver defense, the Bank has not established that Avary intentionally relinquished a right to pursue a claim against the Bank for its conduct in handling the estate. The Bank argues that Avary was aware of the rejected $450,000 offer at the time she testified in favor of the settlement. This evidence does not establish, however, that Avary knew "of the facts on which she bases ... her claims" for purposes of establishing the Bank's waiver and ratification defenses. *See Byrd v. Woodruff,* 891 S.W.2d 689, 699 (Tex.App.—Dallas 1994, writ dism'd by agr.). Avary's complaint is that the Bank accepted an allocation of $75,000 of the overall settlement when it knew or should have known the estate's tax obligations far exceeded that amount. There is no evidence in the summary judgment record that Avary was aware of these facts and therefore intentionally relinquished her

right to challenge the Bank's handling of the estate's affairs.

In reaching our conclusion regarding the Bank's affirmative defenses, we find our decision in *Byrd* instructive. In that case, we held a client's testimony that a settlement was "fair and equitable" did not bar a subsequent claim for legal malpractice. Woodruff had represented Byrd, a minor, in two lawsuits arising out of Byrd's accident on a riding lawn mower. The judge in the underlying personal injury lawsuit held hearings on the various settlements reached in the case. At the hearings, Byrd testified the settlements were fair and equitable. *Byrd*, 891 S.W.2d at 696. In the subsequent legal malpractice case, Byrd alleged Woodruff was derelict in her duties regarding settlement and a related trust agreement. *Byrd*, 891 S.W.2d at 697. The trial judge granted Woodruff's motion for summary judgment without specifying the grounds. *Byrd*, 891 S.W.2d at 698. Woodruff's summary judgment motion included a request for judgment on the affirmative defenses of estoppel, ratification, and waiver. *Byrd*, 891 S.W.2d at 699.

As in this case, Woodruff argued Byrd's testimony at the settlement approval hearings precluded Byrd's later claims. We concluded summary judgment on the ground of estoppel was not proper, noting Byrd did not "challenge the fairness and reasonableness of the underlying settlements themselves." *Byrd*, 891 S.W.2d at 699. Rather, Byrd's suit complained of Woodruff's conduct in representing her and managing the settlement funds. No issue of Woodruff's legal representation was litigated in the prior suit, and Byrd was not estopped from asserting her claims against Woodruff:

> [T]he doctrine of estoppel requires that the party claiming the estoppel must be without knowledge, or the means of ac-

quiring knowledge, of the facts which the party to be estopped is alleged to have represented by her acts, conduct, or silence. *Simpson v. MBank Dallas, N.A.*, 724 S.W.2d 102, 107 (Tex.App.— Dallas 1987, writ ref'd n.r.e.). As [Byrd]'s attorney, Woodruff knew, or should have known, of the facts and circumstances surrounding the judgment and creation of the trust. Woodruff was as competent as [Byrd], if not more so, to evaluate the fairness of the settlements and the creation of the trust. There is no evidence that Woodruff was without such knowledge. Under these circumstances, estoppel does not apply. *See Simpson*, 724 S.W.2d at 108.

*Byrd*, 891 S.W.2d at 699. We also concluded there was no waiver or ratification through Byrd's acceptance of the settlement proceeds, because she was not challenging the reasonableness of the settlements themselves, but rather Woodruff's alleged mishandling of the settlement proceeds. *Byrd*, 891 S.W.2d at 699. Further, there was no evidence that Byrd knew, at the time she accepted the check and executed the trust agreement, of the facts on which she based her malpractice claims. *Byrd*, 891 S.W.2d at 699.

With respect to the Bank's affirmative defenses, there is no summary judgment evidence Avary was aware the Bank accepted an allocation of $75,000 of the overall settlement when it knew or should have known the estate's tax obligations far exceeded that amount and, therefore, intentionally relinquished her right to challenge the Bank's handling of the estate's affairs. There is no summary judgment evidence of misrepresentation or concealment by Avary of facts the Bank had no means of knowing. There is no summary judgment evidence Avary agreed to discharge an obligation of the Bank or to ratify its

actions. Accordingly, the trial judge erred in granting summary judgment for the Bank on its affirmative defenses of accord and satisfaction, ratification, waiver, and estoppel.

## AVARY'S CLAIMS

Next, we address whether summary judgment was properly granted on the remaining ground of the Bank's motion, that there is no evidence to support Avary's claims. If there is more than a scintilla of evidence supporting the elements of these claims, then summary judgment was not proper. *See Gen. Mills*, 12 S.W.3d at 833. After reviewing the summary judgment record, we conclude there is more than a scintilla of evidence to support Avary's claims, even without further discovery of communications made at the mediation.

At the outset, we note the Bank's summary judgment motion did not address all of Avary's claims. In her original petition, Avary alleged claims for "breach of fiduciary duty/mismanagement of estate assets," "negligence/wilful neglect," and "fraud, conspiracy, conversion of assets." Avary pleaded similar facts to support each cause of action, all arising out of the Bank's settlement of the estate's claims in the *Yanmar Diesel* lawsuit. The Bank filed its summary judgment motion on these claims shortly after Avary filed her original petition. By the time of the summary judgment hearing, almost a year later, Avary's sixth amended original petition had been filed. In it, Avary alleged the same three causes of action, and added a new cause of action for a declaratory judgment that sections 154.073 and 154.053 of the Texas Civil Practice and Remedies Code violated the open courts provision of the Texas Constitution.

■■■■ The Bank's summary judgment motion, however, was not amended to address the declaratory judgment claim.

If the plaintiff amends the petition to add new causes of action after being served with a motion for summary judgment, the defendant must file an amended or supplemental motion to address the newly-pleaded causes of action. *See Harris v. Varo, Inc.*, 814 S.W.2d 520, 526 (Tex.App.—Dallas 1991, no writ); *Johnson v. Rollen*, 818 S.W.2d 180, 183 (Tex. App.—Houston [1st Dist.] 1991, no writ). If the defendant fails to address the newly-pleaded causes of action, summary judgment may not be granted, as a matter of law, on the additional causes of action. *See Harris*, 814 S.W.2d at 526. Thus, summary judgment on Avary's claim for declaratory judgment was improper. *See Espalin*, 27 S.W.3d at 688 ("A summary judgment that purports to dispose of causes of action not addressed in the summary judgment motion is erroneous.").

■■■■ For her remaining claims, Avary was required to produce more than a scintilla of evidence of the Bank's breach of fiduciary duty, negligence, fraud, and conspiracy in order to avoid summary judgment. *See Gen. Mills*, 12 S.W.3d at 832–33. As independent executor of the estate, the Bank had a fiduciary relationship with Brett and Timothy and, therefore, owed them "a fiduciary duty of full disclosure of all material facts known to [it] that might affect [the beneficiaries'] rights." *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex.1984) (trustees of trust and executors of estate had fiduciary duty of full disclosure to beneficiary); *see Huie v. DeShazo*, 922 S.W.2d 920, 923 (Tex.1996). A fiduciary "owes its principal a high duty of good faith, fair dealing, honest performance, and strict accountability." *Ludlow v. DeBerry*, 959 S.W.2d 265, 279 (Tex.App.—Houston [14th Dist.] 1997, no writ). Avary's claims arise out of the Bank's rejection of the alleged $450,000 settlement offer and

the allocation to the estate of a much smaller portion of the settlement, which was insufficient to satisfy the estate's known tax obligations. The amount of the settlement apportionment to the estate and the amount of the estate's tax obligations are matters that may be proved without disturbing the confidentiality of the mediation. As will be discussed in more detail below, evidence that is discoverable independent of the alternative dispute resolution procedure is discoverable regardless of its use in the procedure. *See* Tex. Civ. Prac. & Rem.Code Ann. § 154.073(c) (Vernon Supp.2002).

■ Avary's negligence, fraud, and conspiracy claims arise out of the alleged breaches of fiduciary duty and failures to disclose. The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach. *See El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). As noted above, the Bank as executor of the estate had a duty to the beneficiaries which Avary claims it breached. Similarly, breach of the duty of full disclosure by a fiduciary is tantamount to fraudulent concealment. *See Willis v. Maverick,* 760 S.W.2d 642, 645 (Tex.1988). Avary's conspiracy claim requires proof of a combination of two or more persons with an unlawful purpose or a lawful purpose to be accomplished by unlawful means. *See Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 675 (Tex.1998). Because a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold the defendant responsible, conspiracy is considered to be

a derivative tort. *Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex.1996). The conspiracy Avary alleges arises out of her breach of fiduciary duty claim. Thus, Avary's negligence, fraud, and conspiracy claims overlap her claim of breach of fiduciary duty, and much of the same evidence relevant to the breach of fiduciary duty claim is also relevant to the other causes of action.

■ The summary judgment record reflects Kirchner's testimony was elicited on three different occasions: first, at her original deposition; second, in the *in camera* hearing held by the trial judge; and third, at the continuation of her deposition following the trial judge's ruling that the *in camera* testimony could be released to Avary. At the *in camera* hearing, Kirchner testified regarding the $75,000 figure for allocation of the settlement proceeds to the estate: "It was something the bank said we needed, and the way we arrived at the 75,000 was we needed to cover fees. We needed to pay burial expenses. We needed to reimburse parents for the death of the decedent. That's how the $75,000 arose." Kirchner reiterated this testimony: "We arrived at our $75,000 by determining what the burial expenses were, what we needed to reimburse the parents for, and what fees it would be." In this testimony, she made no mention of the estate's tax liability as a factor that was considered in the decision to accept the $75,000 allocation. In the continuation of Kirchner's deposition, she testified that on the day prior to the mediation, she received an e-mail[1] from the Bank's tax department giving an estimate of the

---

1. It appears that this e-mail may have been part of Exhibit 4 to Kirchner's deposition, but the exhibits were not included in the record. For this reason, the record does not include the amount of tax liability calculated by the Bank as of the date of the mediation. Kirchner's testimony, however, does establish the

Bank was aware of a tax liability and the possibility of obtaining settlement proceeds to satisfy the estate's tax obligations. Kirchner also testified in the first part of her deposition that the estate's funds were insufficient to pay outstanding taxes.

amount of the estate's state and federal taxes that were due as of that date. Kirchner responded, "Hopefully, we will get some money tomorrow at the mediation to pay these debts off." She further testified:

Q: So you were aware of the necessity and need by the Estate for tax money?

A: Certainly, we all were aware of that.

Q: At the time you went to the mediation?

A: Yes.

Q: And you were aware of that at the time that the bank accepted the $75,000?

A: Yes.

This testimony was submitted with Avary's amended summary judgment response, and the Bank made no further objection to its admission after the conclusion of the *in camera* hearing and order. The summary judgment evidence also revealed Avary was not consulted about the allocation of settlement proceeds to the estate or informed of the estate's outstanding obligations prior to the mediation.

Viewed in the light most favorable to the nonmovant, the Bank's acceptance of an apportionment of the settlement proceeds without consideration of the estate's tax obligations and without any disclosure to the heirs of the effect of the apportionment on the estate's remaining assets and liabilities is some evidence of a breach of fiduciary duty. Thus, summary judgment was not proper on Avary's claim for breach of fiduciary duty and the related negligence and fraud claims.

 To avoid summary judgment on the conspiracy claim, Avary was required to produce evidence on the following elements: (i) two or more persons; (ii) an object to be accomplished; (iii) a meeting of minds on the object or course of action; (iv) one or more unlawful, overt acts; and (v) damages as a proximate result. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983). As noted above, the unlawful, overt act alleged is the Bank's breach of fiduciary duty. As to the first three elements, however, Avary alleges that the Bank conspired with attorneys Matthews and Cowan, but does not proffer or cite to any summary judgment evidence of meeting of the minds or unlawful purpose. Therefore, summary judgment on this cause of action was proper unless Avary should have been permitted to conduct further discovery. We address this point below.

## DISCOVERY ON AVARY'S CLAIMS

The trial judge's rulings on Avary's affirmative claims and on the discovery motions seeking evidence relating to those claims were based upon the confidentiality provisions of the alternative dispute resolution statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 154.073 (Vernon Supp.2002). As noted above, the trial judge permitted a deposition of the Bank's representative, but did not allow any further discovery of mediation communications or events relating to Avary's affirmative claims. These rulings resulted in the trial judge's concluding there was no genuine issue of material fact supporting Avary's claims. Kirchner was not present at the mediation when the offer of $450,000 was allegedly made. Thus, she could not testify about the alleged offer and rejection of it, and no other witness was permitted to testify as to anything occurring at the mediation. With only Kirchner's testimony, Avary had no evidence of one of the primary factual allegations underlying her claims against the Bank. Further, she was prohibited from obtaining any other discovery of mediation communications or events that might provide evidence to support her

claims. This result, however harsh, should be the correct one if every communication made in mediation is always confidential.

Confidentiality Provisions and Exceptions

Section 154.073 of the Texas Civil Practice and Remedies Code is part of the statutory scheme for alternative dispute resolution ("ADR"). *See* TEX. CIV. PRAC. & REM.CODE ANN. Chapter 154, "Alternative Dispute Resolution Procedures" (Vernon 1997 and Supp.2002) (the "ADR statute"). Section 154.073 provides:

**Confidentiality of Certain Records and Communications**

(a) Except as provided by Subsections (c), (d), (e), and (f), a communication relating to the subject matter of any civil or criminal dispute made by a participant in an alternative dispute resolution procedure, whether before or after the institution of formal judicial proceedings, is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding.

(b) Any record made at an alternative dispute resolution procedure is confidential, and the participants or the third party facilitating the procedure may not be required to testify in any proceedings relating to or arising out of the matter in dispute or be subject to process requiring disclosure of confidential information or data relating to or arising out of the matter in dispute.

(c) An oral communication or written material used in or made a part of an alternative dispute resolution procedure is admissible or discoverable if it is admissible or discoverable independent of the procedure.

(d) A final written agreement to which a governmental body, as defined by Section 552.003, Government Code, is a signatory that is reached as a result of a dispute resolution procedure conducted under this chapter is subject to or excepted from required disclosure in accordance with Chapter 552, Government Code.

(e) If this section conflicts with other legal requirements for disclosure of communications, records, or materials, the issue of confidentiality may be presented to the court having jurisdiction of the proceedings to determine, in camera, whether the facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure.

(f) This section does not affect the duty to report abuse or neglect under Subchapter B, Chapter 261, Family Code, and abuse, exploitation, or neglect under Subchapter C, Chapter 48, Human Resources Code.

(g) This section applies to a victim-offender mediation by the Texas Department of Criminal Justice as described in Article 56.13, Code of Criminal Procedure.

 Under section 154.073, there are several exceptions to the general rule of confidentiality.[2] First, if the communication does not relate to the subject matter of the dispute, or does not relate to or arise out of the matter in dispute, it may not be confidential under subsections (a) and (b). *See In re Daley*, 29 S.W.3d 915, 918 (Tex.App.—Beaumont 2000, orig. proceeding) (deposition questions regarding whether participant attended mediation

---

**2.** Two statutory exceptions, for written agreements to which governmental bodies are signatories, and for reporting of abuse and neglect, set forth in subsections (d) and subsection (f), have no relevance here and are not discussed further.

and whether he had mediator's permission to leave did not concern subject matter of underlying suit and thus were not confidential under section 154.073). Second, subsection (c) provides that if the communication is admissible or discoverable independent of the alternative dispute resolution procedure, then it is admissible or discoverable regardless of its use in an alternative dispute resolution procedure. *See Smith v. Smith*, 154 F.R.D. 661, 669 (N.D.Tex.1994) (subsection 154.073(c) should have same effect as Texas Rule of Civil Evidence 408, which does not require exclusion of "otherwise discoverable" evidence). While, as noted above, some of the evidence at issue here may be "otherwise discoverable," and some may not relate to the subject matter of the underlying lawsuit, we do not find either exception to be dispositive here.

Third, if there are "other legal requirements for disclosure" of the communication, the trial court may order disclosure after *in camera* review. This appeal involves the third exception.

### The Trial Judge's Rulings

The trial judge made four determinations in the course of his discovery rulings. First, he concluded the Bank's fiduciary duty was a "legal requirement for disclosure" that conflicted with the confidentiality provisions of section 154.073. Second, he decided to hold an *in camera* hearing under subsection 154.073(e). Third, he determined that the facts and circumstances of the case warranted disclosure of mediation communications. Fourth, he prohibited any discovery of mediation communications or events other than Kirchner's deposition.

The trial judge conducted one *in camera* proceeding under subsection (e) regarding questions posed to Kirchner at her deposition. At the *in camera* hearing, out of the hearing of Avary's counsel, the trial judge read questions to Kirchner from the transcript of her deposition that she had not answered based upon the Bank's confidentiality objection. The trial judge then ruled Kirchner's answers should be disclosed to Avary's counsel after being sealed for a period of ten days. The Bank did not challenge this ruling.

While the trial judge permitted some discovery regarding Avary's claim for breach of fiduciary duty by allowing the deposition of the Bank's representative, he did not allow any other discovery of the claim. The requests for admission directed to the Bank inquired into the alleged $450,000 settlement offer, Kirchner's presence at the mediation, and Kirchner's delegation of authority to others upon leaving the mediation. The Bank objected to these requests as calling for privileged and confidential information. While Kirchner did answer some of these questions during the *in camera* hearing, she could not answer others because she admittedly was not present when the alleged $450,000 settlement offer was made. Thus, the trial judge found that Avary could question Kirchner about the events of the mediation, but could not question the Bank itself on the same topics through written requests for admission. The basis for this distinction is not apparent from the record. Given the Bank's strenuous argument that it did not delegate authority to any other party regarding the settlement of the case, and the Bank's fiduciary obligations, whether or not the Bank had knowledge of the mediation proceedings after Kirchner left is a question highly relevant to Avary's claims.

The trial judge concluded the Bank's fiduciary obligations to make disclosures to the beneficiaries constituted a "legal requirement for disclosure" under section 154.073(e). Once the trial judge concluded

such a "legal requirement" existed, he made the determination contained in subsection (e), that is, whether the "facts, circumstances, and context of the communications or materials sought to be disclosed warrant a protective order of the court or whether the communications or materials are subject to disclosure." He concluded Kirchner, the Bank's representative, could be questioned, but no further discovery could be taken.

Analysis Under Subsection 154.073(e)

■ In issues two and three, Avary complains the trial judge abused his discretion in entering orders preventing her from deposing witnesses and obtaining written discovery regarding what occurred at the mediation session. Initially, we must determine whether the trial judge correctly concluded that the confidentiality provisions of section 154.073 conflicted with "other legal requirements for disclosure," and the "facts, circumstances, and context of the communications ... sought to be disclosed ... [were] subject to disclosure."

First, as noted above, the trial judge concluded the Bank's fiduciary obligations constituted a "legal requirement for disclosure" for purposes of subsection 154.073(e). We agree. A legal duty of disclosure has been established between the Bank and Avary; that is, in its capacity as executor of the Bourgeois estate, the Bank had a legal duty to disclose material information to the beneficiaries. *See Montgomery*, 669 S.W.2d at 313. Because of this fiduciary relationship, Avary was entitled to question the Bank fully regarding its handling of the estate and other matters regarding the estate. *See Huie*, 922 S.W.2d at 923. The information at issue here—a rejection of a settlement offer exceeding the estate's tax liabilities in favor of an allocation that did not—is a material fact affecting the beneficiaries' rights. The Bank as executor has a duty to disclose this material information to the beneficiaries and their representative. Once such a legal duty to disclose is established, the trial judge must determine under section 154.073(e) whether a conflict exists between the legal duty and the confidentiality requirements of the ADR statute. If a conflict exists, the trial judge must next determine whether, under the facts and circumstances presented, disclosure of the confidential communications is warranted.

The *Yanmar Diesel* defendants' alleged offer of $450,000 to the estate alone, and the Bank's rejection of that offer on the estate's behalf is a confidential mediation communication, and is the very information Avary seeks to establish her claims against the Bank. Thus, the Bank's fiduciary duty to disclose a material fact potentially affecting the beneficiaries' rights is squarely in conflict with the statutory provisions of section 154.073(a) that "a communication relating to the subject matter of any civil ... dispute made by a participant in an alternative dispute resolution procedure ... is confidential, is not subject to disclosure, and may not be used as evidence against the participant in any judicial or administrative proceeding." The Bank's fiduciary duty of disclosure was a "legal requirement for disclosure" conflicting with the confidentiality provisions of section 154.073.

■ Second, because of the conflict between the Bank's duty to disclose and the confidentiality provisions of section 154.073, the trial judge undertook the analysis under section 154.073(e), whether disclosure of the confidential communications was warranted under the facts and circumstances presented. The trial judge correctly concluded the Bank's fiduciary obligations warranted disclosure of mediation

communications under these circumstances. While the fiduciary duty of disclosure is not unlimited, *see Huie,* 922 S.W.2d at 925 (attorney-client privilege protects communications between fiduciary and attorney), it is a "high duty" of "full disclosure of all material facts" that might affect the beneficiaries' rights. *Huie,* 922 S.W.2d at 923; *Montgomery,* 669 S.W.2d at 313; *Ludlow,* 959 S.W.2d at 279.

There is no question that confidentiality of communications is an important part of the statutory scheme of alternative dispute resolution. The overarching policy goal of alternative dispute resolution is clearly set forth by the legislature in section 154.002 of the ADR statute: "It is the policy of this state to encourage the peaceable resolution of disputes ... and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM.CODE ANN. § 154.002 (Vernon 1997). Mediation is described in the ADR statute as "a forum in which an impartial person, the mediator, facilitates communication between parties to promote reconciliation, settlement, or understanding among them." TEX. CIV. PRAC. & REM.CODE ANN. § 154.023(a) (Vernon Supp.2002). It is the responsibility of courts to carry out the statutory policy. TEX. CIV. PRAC. & REM. CODE ANN. § 154.003 (Vernon 1997); *In re Acceptance Ins. Co.,* 33 S.W.3d 443, 451 (Tex.App.—Fort Worth 2000, orig. proceeding). Proponents of mediation stress that confidentiality is critical to the success of the process. ALAN SCOTT RAU, EDWARD F. SHERMAN & BRIAN D. SHANNON, RAU, SHERMAN & SHANNON'S TEXAS ADR & ARBITRATION: STATUTES AND COMMENTARY 45 (2000) ("RAU, SHERMAN & SHANNON"). Without a guarantee of confidentiality, parties may be reluctant to speak freely and address the heart of their dispute. RAU, SHERMAN & SHANNON at 45. The breadth of the language used in section 154.073 indi-

cates the legislature recognized these concerns.

Courts have recognized the importance of confidentiality as well. Several courts have held that while a trial judge may order parties to attend a mediation, he cannot impose sanctions for failure to negotiate in "good faith." *See, e.g., Hansen v. Sullivan,* 886 S.W.2d 467, 469 (Tex. App.—Houston [1st Dist.] 1994, orig. proceeding) (judge "cannot force the disputants to peaceably resolve or negotiate their differences;" sanctions for failure to negotiate in good faith improper where party appeared and participated in mediation for three hours until mediator declared impasse); *Decker v. Lindsay,* 824 S.W.2d 247, 250–51 (Tex.App.—Houston [1st Dist.] 1992, no writ) (parties may be ordered to attend mediation over objection, but cannot be compelled to negotiate in good faith). These opinions reveal the courts' concern that proving a party's "good faith" would necessarily involve disclosure of confidential communications. *See In Re Acceptance Ins. Co.,* 33 S.W.3d at 453 (ADR statute requires that manner in which participants negotiate should not be disclosed to trial judge; therefore, judge abused his discretion in overruling objections to testimony about participant's consultations with supervisor during mediation and sanctioning party for failure to comply with mediation order).

■ As previously noted, when a legal requirement for disclosure conflicts with the statute's confidentiality provisions, section 154.073 permits parties to submit to the trial judge the question whether, under the circumstances of a particular case, communications made by a participant in mediation may be disclosed. Here, the parties to the original litigation have peaceably resolved their dispute, as the ADR statute contemplates. Avary now seeks to prove a new and independent tort

that she alleges occurred between her and her own fiduciary, the Bank, during the course of the mediation proceeding. She does not propose to discover evidence to allow her to obtain additional funds from the *Yanmar Diesel* defendants or to use mediation communications to establish any liability on their part after they have peaceably resolved their dispute. Instead, Avary proposes to offer the evidence in a separate case against a separate party to prove a claim that is factually and legally unrelated to the wrongful death and survival claims.

Although no courts have addressed this issue under section 154.073 of the ADR statute, similar considerations have arisen under rule 408 of the Texas Rules of Evidence,[3] which excludes evidence of offers to compromise a disputed claim. The confidentiality protections of section 154.073 are broader than the exclusionary rule set forth in rule 408, but similar policy concerns underlie both provisions. Under rule 408, offers of compromise or settlement are excluded as evidence "to allow a party to buy his peace and encourage settlement of claims outside of the courthouse." *State Farm Mut. Auto. Ins. Co. v. Wilborn*, 835 S.W.2d 260, 261 (Tex.App.—Houston [14th Dist.] 1992, orig. proceeding). Evidence of an offer of compromise is considered unreliable on the issue of liability because it does not necessarily represent a party's actual position on the merits of a claim, but rather the amount a party may be willing to give or take to avoid the expense and annoyance of litigation. *See Wilborn*, 835 S.W.2d at 261. Like section 154.073's exceptions, rule 408 does not exclude evidence that is "otherwise discoverable," and evidence of compromise may be "offered for another purpose."

Under rule 408, courts addressing insurance bad faith claims have struggled with the admission of an offer to compromise where the offer would be irrelevant and prejudicial regarding the insurance company's liability under the policy itself, but could be an essential element of the insured's cause of action for bad faith or of the insurance company's defense to the bad faith claim. *See, e.g., Wilborn*, 835 S.W.2d at 261; *Allstate Ins. Co. v. Evins*, 894 S.W.2d 847, 849 (Tex.App.—Corpus Christi 1995, orig. proceeding). While evidence of an offer of settlement "would be prejudicial to the insurer because of its implication that the insurer has admitted liability" on the contract claim, "the very same evidence of settlement offers may be of great benefit to the insurance company in its defense against the bad faith claims, to show that it made a reasonable attempt to pay the amount it believed it owed on its insured's claim." *Evins*, 894 S.W.2d at 849. In *Wilborn*, the settlement offer was a key to the *plaintiff's* case; she testified that the insurer's offer of $20,000 on a policy with limits of $50,000 provided the

---

**3.** Rule 408 provides:

**Compromise and Offers to Compromise**

Evidence of (1) furnishing or offering or promising to furnish or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice or interest of a witness or a party, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Tex.R. Evid. 408.

grounds for her bad faith claim. *Wilborn*, 835 S.W.2d at 261. In these cases, evidence of an offer to compromise is admissible to prove or disprove the extracontractual liability of an insurance company on a bad faith claim, even against the party making the offer, although sometimes not until a second, severed proceeding. *Compare Wilborn*, 835 S.W.2d at 262 (severance of two claims required), *with Evins*, 894 S.W.2d at 849–50 (limiting instruction suffices).

In these cases, courts have recognized a party's right to present evidence of the offer to compromise when it is proof of the bad faith claim itself or relevant to the defense of it. The right to develop evidence for a bad faith claim or defense is considered to be a "substantial right." *See, e.g., Wilborn*, 835 S.W.2d at 262; *In re Foremost Ins. Co.*, 966 S.W.2d 770, 772 (Tex.App.—Corpus Christi 1998, orig. proceeding). Rule 408 does not prevent a party from proving a separate cause of action simply because some of the acts complained of took place during compromise negotiations.[4]

■ Similarly, we have held that despite the public policy supporting ADR and the peaceable resolution of disputes, there is an equally important public policy to preserve "significant and well established procedural and substantive rights." *Cadle Co. v. Castle*, 913 S.W.2d 627, 632 (Tex.App.—Dallas 1995, writ denied). Thus, in actions to enforce settlement agreements under section 154.071 of the ADR statute, parties have "the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury." *Cadle*, 913 S.W.2d at 632; *see also Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 658–59 and n. 2 (Tex.1996) (party seeking enforcement of settlement agreement where other party has withdrawn consent must pursue breach of contract claim, "which is subject to the normal rules of pleading and proof," citing *Cadle*); *Stevens v. Snyder*, 874 S.W.2d 241, 243–44 (Tex.App.—Dallas 1994, writ denied) (under ADR statute, party may enforce settlement agreement without other party's consent under contract law).

---

**4.** Rule 408 of the Federal Rules of Evidence is substantially similar to its Texas counterpart. Interestingly, in commenting on Federal Rule of Evidence 408, Wright and Graham state: "Rule 408 is also inapplicable when the claim is based upon some wrong that was committed in the course of the settlement discussions; e.g. libel, assault, breach of contract, unfair labor practice, and the like." 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5314 (1980) ("Wright & Graham") (footnotes omitted). Wright and Graham note that rule 408 "does not prevent the plaintiff from proving his case; wrongful acts are not shielded because they took place during compromise negotiations." 23 Wright & Graham § 5314, main volume and 2000 supplement. Wright and Graham include in their citations *Portland Savings & Loan Association v. Bernstein*, 716 S.W.2d 532, 537 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.), *overruled on other grounds, Dawson–Austin v. Austin*, 968

S.W.2d 319, 323 (Tex.1998), as well as Texas insurance cases. *See* 23 Wright & Graham § 5314, main volume and 2000 supplement. At least one later court has limited *Bernstein* to cases in which evidence of compromise negotiations was admitted only in order to establish personal jurisdiction, not to establish liability for a wrong occurring in the course of a settlement discussion. *See Barrett v. U.S. Brass Corp.*, 864 S.W.2d 606, 633–34 (Tex.App.—Houston [1st Dist.] 1993), *aff'd in part, rev'd in part on other grounds, Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644 (Tex.1996). In any event, under Wright and Graham's analysis, rule 408's exclusionary rule would not prevent the discovery Avary seeks here, regarding a wrong committed in the course of a settlement discussion. Because the confidentiality provisions of section 154.073 of the ADR statute are broader than rule 408's exclusionary rule, however, we cannot conclude our analysis here.

These actions to enforce settlement agreements implicate confidentiality concerns. Although not raised in *Cadle,* evidence relating to (i) the parties' intent in entering into a settlement agreement, (ii) any ambiguity in the agreement, and (iii) affirmative defenses to a claim for breach of the agreement could, in some circumstances, involve evidence of otherwise confidential mediation communications. One court rejected a confidentiality objection in holding that an oral agreement reached in mediation was enforceable, although the parties apparently did not raise, and the court did not address, confidentiality under section 154.073 of the ADR statute. *See Hur v. City of Mesquite,* 893 S.W.2d 227, 234 (Tex.App.—Amarillo 1995, writ denied) (confidentiality provisions of section 154.053(c) speak only to mediator's duties). Because the alleged oral agreement in *Hur* was reached in mediation, proof of the agreement and any defenses would necessarily involve disclosure of mediation communications.[5]

Here, Avary alleges that a new and independent tort arose during the course of the mediation. That tort involves breach of a duty to disclose by Avary's fiduciary. Significant substantive and procedural rights of Avary's are implicated, including the opportunity to develop evidence of her claim and to submit contested fact issues to a judge or jury. In pursuing this claim, Avary will not disturb the settlement with the *Yanmar Diesel* defendants. All of these considerations support the trial court's decision under subsection 154.073(e). We conclude the trial judge

correctly determined that the Bank's fiduciary obligations warranted disclosure under "the facts, circumstances, and context" presented to him.

However, our analysis does not end here. After conducting an *in camera* hearing under section 154.073(e), the trial judge concluded that the Bank's fiduciary obligations warranted disclosure but limited discovery to the testimony of Kirchner, the Bank trust officer who left the mediation before it concluded. The trial judge did not conduct similar *in camera* proceedings before denying discovery of other mediation communications. For the requests for admission to the Bank, an additional hearing may not have been needed. The requests for admission were directed to the Bank, so the same "facts, circumstances, and context" relevant to Kirchner's deposition would control disclosure under subsection (e). For the purpose of the analysis under subsection (e), there is no distinction between the Bank and Kirchner, its agent, with respect to the Bank's duty to disclose. Once he concluded that the facts, circumstances, and context of the case required disclosure of Kirchner's testimony, the trial judge abused his discretion by entering an order that the Bank was not required to respond to requests for admission involving the same information.

▪ The considerations for the deposition of the *Yanmar Diesel* defendants' attorney, Noah, however, were different from those surrounding discovery from the

---

5. The *Hur* case is cited here because it is one of very few opinions by Texas courts addressing the issue of mediation confidentiality, and because the *Hur* court recognized that confidentiality concerns may arise in a suit to enforce a settlement agreement reached in a mediation. The ADR statute itself allows a party to enforce a written settlement agreement reached at mediation "in the same manner as any other written contract." *See* Tex. Civ. Prac. & Rem.Code Ann. § 154.071(a) (Vernon 1997) (implicitly creating exception to confidentiality where necessary to prove terms of written agreement). The *Hur* court's assumption that the same exception exists for an oral agreement has broader implications for mediation confidentiality that we do not address here.

Bank and its agents. The trial judge should have conducted an *in camera* hearing to determine the "facts, circumstances, and context" surrounding Noah's potential testimony. While it is true that neither Noah nor his clients, the *Yanmar Diesel* defendants, shared any fiduciary obligation with the Bank, it does not follow that Noah would have no knowledge of any fact relevant to the *Bank's* duty. Nonparty witnesses may well have knowledge of facts relevant to a party's potential liability in any lawsuit, as the Texas Rules of Civil Procedure recognize. *See* TEX.R. CIV. P. 205, "Discovery from Nonparties." Nevertheless, the mere possession of relevant knowledge does not end the inquiry here. Because Noah would be testifying as to confidential mediation communications, the trial judge must first determine whether disclosure is warranted under the facts, circumstances, and context as they relate to Noah. Noah may have relevant knowledge of facts critical to Avary's claims. On the other hand, Noah may have no knowledge or only knowledge that was gained through an attorney-client communication with one of his clients or through his own work product. Noah and his clients may have relied on the protections of the attorney-client and the work product privileges in analyzing their case and making decisions about settlement. Revealing why an offer was made or how the specific amount of the offer was calculated could invade those privileges. Purely factual information, however, would not be protected by these privileges. *See Huie,* 922 S.W.2d at 923 ("a person cannot cloak a material fact with the [attorney-client] privilege merely by communicating it to an attorney"). The trial judge could also weigh any potential harm to the mediation process by disclosure of communications the parties made under the expectation that they would remain confidential. It is one thing to order discovery from a party alleged to have committed a tort during the mediation process; it is another to reach across the mediation table to parties who have settled the claims against them. The trial judge may consider these and other factors in an *in camera* hearing, and could then decide that all, some, or none of Noah's testimony should be disclosed. The trial judge abused his discretion in not conducting an *in camera* hearing to determine the "facts, circumstances and context" surrounding Noah's potential testimony.

■ The trial judge did not conduct an *in camera* hearing before prohibiting Avary from deposing Sutherland, Avary's own attorney. As with Noah, Sutherland would be testifying at least in part as to confidential mediation communications. Further, like Noah, Sutherland may have knowledge of facts relevant to the Bank's alleged breach of fiduciary duty. Unlike Noah, Sutherland's client would be conducting the deposition. Any attorney-client privilege as to communications between Sutherland and Avary belongs to Avary and could be waived by her. *See* TEX.R. EVID. 503(c) ("The privilege may be claimed by the client ..."); TEX.R. EVID. 511 (holder of privilege may waive privilege by voluntarily disclosing or consenting to disclosure of privileged matter); *Turner v. Montgomery,* 836 S.W.2d 848, 850 (Tex. App.—Houston [1st Dist.] 1992, orig. proceeding) (attorney can claim privilege only on behalf of client). The analysis under section 154.073(e) of the facts, circumstances, and context surrounding Sutherland's disclosure of mediation communications would be different from the analysis for Noah or the Bank. Thus, the trial judge abused his discretion in not conducting an *in camera* hearing to determine the "facts, circumstances and context" surrounding Sutherland's potential testimony.

In addition, where the Bank's fiduciary obligations warranted disclosure of media-

tion communications, the trial judge should not have ordered a blanket prohibition on any further discovery of evidence relating to alleged breaches of those obligations, even if the persons from whom discovery was sought did not share the Bank's fiduciary obligation to Avary. As noted with respect to attorney Noah, facts relevant to a cause of action may be known by persons other than parties to the litigation. *See* TEX.R. CIV. P. 205. The general rule regarding the scope of discovery is very broad: "In general, a party may obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX.R. CIV. P. 192.3(a) & cmt. 7 ("A court abuses its discretion in unreasonably restricting a party's access to information through discovery."). Under section 154.073(e), the facts, circumstances, and context of the communications sought may warrant protective orders rather than disclosures. This possibility, however, does not justify restricting discovery to a single witness who admittedly lacked knowledge of facts material to Avary's claims. Without further analysis, the trial judge assumed discovery of any information relevant to Avary's claims from any person other than an agent or employee of the Bank was precluded under the confidentiality provisions of section 154.073. This assumption was too broad in light of the trial judge's finding of a conflict between section 154.073's confidentiality provisions and the Bank's fiduciary obligations. The trial judge should have considered the facts, circumstances, and context surrounding the particular information sought, rather than issuing a blanket prohibition on any further discovery.

Our analysis does not require the Bank or any other proposed witness to forego all objection to Avary's requested discovery. The Texas Supreme Court held that while a fiduciary "must fully disclose material facts regarding the administration of the [estate], the attorney-client privilege protects confidential communications between the [fiduciary] and his or her attorney under Rule 503" of the Texas Rules of Evidence. *Huie*, 922 S.W.2d at 925. The court explained:

> Our holding, therefore, in no way affects Huie's [the fiduciary's] duty to disclose all material facts and to provide a full trust accounting to Chenault [the beneficiary], even as to information conveyed to Ringer [the attorney]. In the underlying litigation, Chenault may depose Huie and question him fully regarding his handling of trust property and other factual matters involving the trust. Moreover, the attorney-client privilege does not bar Ringer from testifying about factual matters involving the trust, as long as he is not called on to reveal confidential attorney-client communications.

*Huie*, 922 S.W.2d at 923. Thus, the Bank may assert objections to revealing attorney-client communications or make other applicable objections. Similarly, any other person or entity from whom discovery is sought may object as permitted by the rules of civil procedure. Moreover, the trial judge may decide that further *in camera* proceedings are necessary under subsection 154.073(e) to determine the "facts, circumstances, and context" of particular mediation communications or events before ordering disclosure. We recognize this process is potentially cumbersome. In light of the important considerations involved, however, convenience is secondary.

## CONCLUSION

Our conclusion that the trial judge unreasonably restricted discovery regarding

Avary's affirmative claims is limited to the facts before us. We are not presented with the question whether discovery of mediation communications would be appropriate if sought in the same case in which mediation had failed, and in which the parties were proceeding to trial on their original claims and defenses. Nor are we presented with the question whether a mediator can be compelled to testify or respond to discovery. We conclude only that where a claim is based upon a new and independent tort committed in the course of the mediation proceedings, and that tort encompasses a duty to disclose, section 154.073 does not bar discovery of the claim where the trial judge finds in light of the "facts, circumstances, and context," disclosure is warranted.

Avary presented more than a scintilla of evidence on her claims for breach of fiduciary duty, negligence, and fraud relating to the Bank's failures to disclose material facts affecting the rights of the beneficiaries of the estate. The Bank did not establish each element of its affirmative defenses as a matter of law. The Bank's motion did not address Avary's claim for declaratory judgment. For these reasons, summary judgment for the Bank was not proper. Further, the trial judge abused his discretion in unreasonably restricting discovery on Avary's claims. We reverse the trial court's judgment and remand this case for further proceedings consistent with this opinion.