

NUMBER 13-07-00732-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**WELLS FARGO BANK, N.A., IN ITS CORPORATE
CAPACITY AND AS INDEPENDENT EXECUTOR OF
THE ESTATE OF JOHN CROCKER, DECEASED,**       **Appellant,**

**v.**

**SUSAN CROCKER AND JEANNE CROCKER,**       **Appellees.**

---

On appeal from the County Court at Law No. 2
of Victoria County, Texas.

---

# MEMORANDUM OPINION

Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez

This is a breach of fiduciary duty case.  A jury found for appellees, Susan Crocker

and Jeanne Crocker,[1] and against appellant, Wells Fargo Bank, N.A., (Wells Fargo) in its

corporate capacity and as independent executor of the estate of Susan and Jeanne's

deceased father, John Crocker.  The trial court entered judgment against Wells Fargo and

jointly awarded Susan and Jeanne $230,000 in actual damages and $30 million in

exemplary damages.  By five issues, Wells Fargo contends that:  (1) there is no evidence

of breach of duty (negligent or fiduciary) or causation of injury; (2) there is no evidence of

malice to support the punitive damage award; (3) there is no evidence of forgery which is

needed in this case to overcome the statutory cap on punitive damages; (4) the trial court

erred in allowing a post-trial pleading amendment that increased the punitive damage plea

by $27,500,000; and (5) the punitive damages award violates the due process clause.  We

reverse and render.

## I. BACKGROUND

Jeanne and Susan are John's daughters by his first wife, whom he divorced.  In

1995, John married Launa White.[2]  Before their marriage, John and Launa executed a

premarital agreement, which contained the following provision:

> Notwithstanding the foregoing, the parties agree that all bank accounts held
> in the names of both [John and Launa] on the date of marriage shall, after

---

[1]Throughout the record, Jeanne Crocker is also referred to as Jeanne Lynne Stevens.  For ease of reference we will refer to her as Jeanne Crocker.  *See* TEX. R. APP. P. 47.1.

[2]Wells Fargo filed a third-party action against Launa White seeking reimbursement, attorney's fees, and expenses.  In its brief, Wells Fargo explains that because "it had already paid the disputed funds to Launa," by bringing her into the proceedings "the courts could sort out who owed what to whom," and "[i]f the money turned out to belong to the daughters, Wells Fargo would simply seek reimbursement from Launa so that no one ended up with more or less than they deserved."  Wells Fargo's claim against Launa was severed from the underlying lawsuit to be heard at a date subsequent to the trial of the present case.  Launa is not a party to this appeal.

their marriage, be considered community property and all bank accounts opened after the date of marriage in the names of both [John and Launa] shall likewise be considered community property. The parties agree that all bank accounts held in the name of both [John and Launa] shall be held in such a manner as to provide the right of survivorship to the remaining party upon the death of the other.

On April 28, 2000, John spoke with Winston McKnight, a trust administrator at Wells Fargo,[3] about opening two new accounts. John also met with Wells Fargo employee J.P. Green. One of the new accounts was to be a separate account in John's name only which would take its funds from John's separate property.[4] McKnight testified that the second account—the disputed account in this case—was to be a joint account with Launa. The joint account took its funds from existing accounts that John and Launa held as joint tenants with rights of survivorship (ROS).

According to McKnight, when he opened the disputed account for John, he and John "never discussed [ROS]." On the day the disputed account was opened McKnight wrote "+ Launa joint" on a copy of the purported agreement. At trial, McKnight agreed that he wrote "+ Launa joint" without John knowing about it or telling him to do so.[5] McKnight also testified that he wrote "+ Launa joint" on a photocopy of the separate property agreement for his working files to remind him that there were two accounts and to avoid

---

[3]McKnight testified that in April 2000 he "was in charge of a book of trust and investment accounts, I.R.A.s and that [he] was the relationship manager on the accounts . . . ."

[4]There is no dispute regarding the separate account John opened at the same time as the disputed account. The money in this account passed into the estate, and Susan and Jeanne received that money as residuary beneficiaries, after claims against the estate were paid.

[5]Jeanne testified that after she received a copy of the disputed account agency agreement, she called McKnight to ask him to explain it. McKnight told Jeanne that John had written "+ Launa joint" on the agreement after his name. Jeanne testified that when she challenged McKnight saying that it was not her father's handwriting, he replied, "Well, that's what your father did." At his deposition, however, McKnight testified that he, not John, had written the phrase on the agreement and that he did not think that John was with him when he did so.

3

confusion; in an effort to distinguish the new joint account from the new separate account. This agreement did not expressly provide for ROS. In addition, while McKnight first testified that no original agreement relating to the disputed account could be found in Wells Fargo's file, after his memory was refreshed through Green's deposition testimony, McKnight testified that he had, in fact, left the agreement for the disputed account with John and that it apparently was never returned.

By a will dated April 26, 2000, John made a number of specific bequests, leaving, for example, a life estate in their home to Launa and a life estate in his ranch to Susan and Jeanne. By the residuary clause, John left "all the rest, residue and remainder of [his] estate, separate or community, of every kind and character, real, personal and mixed, unto [his] daughters." The will named Wells Fargo as independent executor of the estate, provided that the executor had all the powers given to a trustee by the Texas Trust Code and by law, and specifically directed the executor to pay out of his residuary estate all "just debts and claims" against his estate.

John died on February 22, 2001. Following his death, a dispute arose about the joint account that John had opened a year earlier. Launa contacted Wells Fargo when she found a $334,000 discrepancy in one of the joint accounts with ROS. Wells Fargo determined that the $334,000 had been transferred at John's request from that particular joint account into the disputed joint account that did not have ROS. Launa's attorney contacted Wells Fargo asserting that Launa was entitled to the funds in the disputed account.

On February 28, 2001, Wells Fargo filed an application to probate John's will and on March 2, 2001, was appointed sole independent executor for the estate. On April 26,

4

2001, in accordance with advice from its attorney, Munson Smith, that Launa was legally entitled to the funds, Wells Fargo distributed approximately $460,000 to Launa, which was the total amount in the disputed account at that time.

On May 4, 2001, Wells Fargo and Smith met with Susan, Jeanne, their attorneys, and several of John's grandchildren. At that meeting, Wells Fargo and Smith briefly discussed, for the first time with the others, the decision to distribute the funds from the disputed account to Launa.

Susan and Jeanne sued Wells Fargo for negligence and breach of fiduciary duty alleging that Wells Fargo failed to disclose to them, as residual beneficiaries under their father's will, the nature of, or the problems with, documentation on the disputed account before the $460,000 in the account was paid to Launa as John's surviving wife.[6] Wells Fargo generally denied the claims and specifically pleaded that John's will gave it broad powers as independent executor, including the power to settle disputed claims, if reasonable. Throughout the trial, Wells Fargo asserted that Launa had a valid claim against the estate for the funds at issue and that it properly paid those funds to her, while the Crocker sisters argued that Launa's claim failed.

A jury found that Wells Fargo: (1) negligently distributed funds from the disputed account to Launa, proximately causing injury to Susan and Jeanne, and resulting in actual damages in the amount of $230,000; (2) breached its fiduciary duties to Susan and Jeanne, proximately causing injury, and resulting in actual damages in the amount of $230,000; (3) acted with malice; and (4) committed forgery with the intent to defraud or

---

[6]Jeanne and Susan at first claimed the entire $460,000, but later sought only half of the funds.

5

harm appellees. After resolving liability issues and determining the amount of actual damages, the jury assessed $30 million in punitive damages against Wells Fargo. The trial court entered judgment on the jury's verdict of breach of fiduciary duty and awarded a joint actual-damage award of $230,000 and a punitive-damage award of $30 million against Wells Fargo. This appeal ensued.

## II. LIABILITY

By its first issue, Wells Fargo contends that Susan and Jeanne are not entitled to any actual damages because there is no evidence of a breach of any duty owed them under either theory of recovery—negligence or breach of fiduciary duty. Wells Fargo also argues that there is no evidence that its actions caused injury to Susan and Jeanne.

### A. Standard of Review

We may sustain a no-evidence or legal sufficiency challenge only when (1) the record discloses a complete absence of evidence of a vital fact; (2) the fact-finder is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable juror could and disregard evidence contrary to the finding unless a reasonable juror could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 807, 827 (Tex. 2005). In the context of a jury trial, the sufficiency of the evidence is reviewed in light of the charge submitted if no objection is made to the charge. *Romero v. KPH*

6

*Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *see Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 778 (Tex. 2006) (reviewing the insurer's legal sufficiency challenge according to the charge as given) (citing *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 618-19 (Tex. 2004) ("In assessing the evidence, we assume that the portions of the charge just quoted, because they were given without objection, correctly state the law.")).

### B. Breach of Fiduciary Duty

#### 1. Applicable Law

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App. Houston [14th Dist.] 2008, pet. denied). To recover for a breach of fiduciary duty, a plaintiff has the burden of proving each element. *See, e.g., Avary v. Bank of Am., N.A.*, 72 S.W.3d 779, 792 (Tex. App.–Dallas 2002, pet. denied).

An executor owes fiduciary duties to the beneficiaries of the estate—the same duties applicable to trustees. *Lesikar v. Rappeport*, 33 S.W.3d 282, 296 (Tex. App.–Texarkana 2000, pet. denied) (citing *Humane Soc'y of Austin & Travis County v. Austin Nat'l Bank*, 531 S.W.2d 574, 571 (Tex. 1975); *Ertel v. O'Brien*, 852 S.W.2d 17, 20 (Tex. App.–Waco 1993, writ denied)). As independent executor of the estate, Wells Fargo had a fiduciary relationship with Susan and Jeanne and, therefore, owed them, among other things, "'a fiduciary duty of full disclosure of all material facts known to [it] that might

7

affect [the beneficiaries'] rights.'" *Avary*, 72 S.W.3d at 792 (quoting *Montgomery v. Kennedy*, 669 S.W.2d 309, 313 (Tex. 1984) (holding that trustees of trust and executors of estate had fiduciary duty of full disclosure to beneficiary)).

## 2. Breach

By its first issue, Wells Fargo argues that it did not breach any fiduciary duty owed to Susan and Jeanne because it complied with its duty to pay the right person by marshaling the assets of the estate, examining the claims against the estate, engaging legal counsel to analyze the claims, and paying the party that was entitled to receive the funds. However, the trial court did not instruct the jury on a fiduciary's duty to pay the right person. Rather, the trial court instructed the jury, without objection, on the following fiduciary duties Wells Fargo owed to all beneficiaries of John's estate:

- To act with the utmost good faith and to exercise the most scrupulous honesty toward the beneficiaries;

- To place the interests of the beneficiaries before its own and to not use the advantage of its position to gain any benefit for itself at the expense of the beneficiaries and to not place itself in a position where its self interest might conflict with its obligations as a fiduciary;

- To fully and fairly disclose all important information to the beneficiaries concerning their interests in the Estate; or

- To act impartially by not showing favoritism between or among the beneficiaries.

Therefore, Wells Fargo's conduct is measured against the preceding duties as identified in the jury charge. *See Romero*, 166 S.W.3d at 221 (Tex. 2005)*.*

Smith testified that Wells Fargo did not tell the Crocker daughters about the disputed account before it paid Launa so as to "facilitate our purpose to go ahead and

8

make that settlement if you want to call it that of the legal rights with the parties, irrespective of the claims by the parties." It was Smith's opinion that Launa "was legally entitled to the funds in that account and that any litigation with regard to that would result in additional expense to the estate." In addition, when the Crocker sisters' counsel contacted Smith after the May 2001 meeting, Smith informed him that "in our opinion it was a joint account subject to the right of a survivorship provided by the prenup[tual] agreement."

The evidence establishes that Susan and Jeanne did not learn of the disputed account until the May 2001 meeting. Jeanne testified that when the meeting began, Smith told them there was a joint account, that the money in that account had been given to Launa, and that it was a "done-deal type thing." In addition, the evidence reveals that at the time of the meeting Wells Fargo knew but did not tell the Crocker sisters the following:

- Wells Fargo did not have an original signed agency agreement for the disputed account;

- Wells Fargo had a photocopy of an agreement upon which McKnight had written "+ Launa joint" after John's name;

- the photocopy of the disputed account agreement appeared to be a photocopy of the separate account agreement; and

- nothing in the photocopy of the purported joint-account agency agreement provided for ROS.

Although Susan and Jeanne requested a copy of the disputed account agreement when they learned about it at the May 2001 meeting, Wells Fargo did not provide Susan and Jeanne with copies of any documents related to the disputed account until January or February 2002. Wells Fargo also acknowledged at trial that it had made a mistake when it failed to followup and get the original agency agreement for the disputed account from

9

John. Wells Fargo chose not to disclose this mistake to Susan and Jeanne.

Considering evidence favorable to the finding if a reasonable juror could, disregarding evidence contrary to the finding unless a reasonable juror could not, *see City of Keller*, 168 S.W.3d at 807, 827, and reviewing the evidence in light of the charge instructions regarding fiduciary duties owed, *see Romero*, 166 S.W.3d at 221, we conclude that the evidence offered to prove that Wells Fargo breached its fiduciary duty to Susan and Jeanne "to fully and fairly disclose all important information . . . concerning their interests in the [e]state" is more than a mere scintilla. *See King Ranch*, 118 S.W.3d at 751. Thus, the evidence is legally sufficient to establish Wells Fargo's breach.

Nonetheless, Wells Fargo argues that there is no evidence of breach because Susan and Jeanne offered no expert testimony on this element. However, expert testimony is only necessary when the subject lies outside the realm of what a layperson would understand. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 583 (Tex. 2006); *Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). Disclosing all important information that is known to the executor and that concerns a beneficiary's interest in the estate is part of the fiduciary duty owed to beneficiaries by an executor. *See Avary*, 72 S.W.3d at 792. We cannot conclude that expert testimony is necessary to establish a breach of this simple and straightforward duty. The disclosure of details concerning the Crocker sisters' interest in their father's estate, including the $230,000 from the disputed account, is not outside the common experience and understanding of the average layman. An expert was not required to testify that Wells Fargo, having the fiduciary duty to disclose material facts, should have disclosed information to the beneficiaries concerning the disputed account.

10

We overrule Wells Fargo's first issue to the extent it challenges the breach element.

### 3. Causation of Injury

By its first issue, Wells Fargo also challenges the legal sufficiency of the evidence to establish that the breach caused an injury.[7] *See Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004) ("Breach of the standard of care and causation are separate inquiries . . . and an abundance of evidence as to one cannot substitute for a deficiency of evidence as to the other."). Wells Fargo contends that Susan and Jeanne failed to carry their burden of proving causation because they failed to show that Wells Fargo's actions or inactions caused any cognizable injury. It asserts that the Crocker sisters are ignoring the effect of Launa's claim to the funds. In response, Susan and Jeanne contend that Wells Fargo's argument only assumes that the money belonged to Launa. They urge this is not the case and assert that, but for the Wells Fargo's non-disclosure and its conduct in concealing the nature of the account and its documentation, they would have known the terms of the disputed account, made an appropriate claim to the $230,000, and obtained the funds to which they were entitled. By this reasoning, Susan and Jeanne contend they established the element of causation. We disagree.

---

[7]Under both negligence and breach of fiduciary duty, the tort theories pleaded and charged, Susan and Jeanne had the burden to prove that any wrongdoing by Wells Fargo "proximately caused an injury" to them. *See Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550-551 (Tex. 2005) (concluding even if there were a breach of duty in this negligence case, there was no evidence that such a breach proximately caused the tragic occurrence); *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 635 (Tex. App.–El Paso 2009, pet. filed) (setting out that breach of fiduciary duty requires a showing that the breach caused an injury) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.–Texarkana 2004, no pet.))

Breach of fiduciary duty requires a showing that the breach caused an injury.[8] *Si Kyu Kim v. Harstan, Ltd.*, 286 S.W.3d 629, 635 (Tex. App.–El Paso 2009, pet. filed) (citing *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.–Dallas 2006, pet. denied); *Punts v. Wilson*, 137 S.W.3d 889, 891 (Tex. App.–Texarkana 2004, no pet.)); *Lundy*, 260 S.W.3d at 501. Susan and Jeanne had the burden to prove that Wells Fargo "proximately caused an injury" to them. *See Edwards v. Pena*, 38 S.W.3d 191, 198 (Tex. App.–Corpus Christi 2001, no pet.) (holding that the plaintiff alleging breach of fiduciary duty bears the burden of proof) (citing *Mar. Overseas Corp. v. Ellis*, 977 S.W.2d 536, 538 (Tex. 1996)). "Cause in fact and proximate cause are but specific applications of the rule that a plaintiff must produce

---

[8]Some language used in Susan and Jeanne's appellate arguments appears to suggest that they need not prove causation and injury in this case. For example, they make the following arguments: (1) "numerous fiduciary duties have been breached while [Wells Fargo] has worked to conceal its mistakes by, among other things, forging documents. In this case, causation lies in that concealment," (2) the proximate cause finding "must be analyzed in light of [Wells Fargo's] breach, which arises from its conduct in concealing the nature of the account and the nature of the documentation for the account from the Crockers" and "the forgery of an agency agreement for the disputed account," and (3) "[i]n arguing 'all's well that ends well,' [Wells Fargo] sloughs off its place in the causation chain by contending that the money in the account belonged to Launa all along. But that argument assumes no wrongdoing and conveniently ignores [Wells Fargo's] efforts to conceal its initial mistake through forgery and misrepresentation." In their supplementary statement of facts, the Crocker sisters also state that Wells Fargo "completely ignores the heart of this case—malicious breach of fiduciary duty and the forgery accompanying that breach." Finally, in response to the legal-sufficiency challenge to the breach element, Susan and Jeanne summarize their response as follows: "[Wells Fargo] with Its Corporate Hat on Made a Mistake It Attempted with Its Independent Executor Hat on to Cover; and Therein Lies This Verdict."

To the extent Susan and Jeanne's arguments are asking us to dispense with the need to prove causation and injury in this case, we decline to do so. *See Burrow v. Arce*, 997 S.W.2d 229, 240 (Tex. 1999). Breach is enough only when a plaintiff seeks to forfeit some portion of fees earned in connection with a breach of fiduciary duty. *Si Kyu Kim*, 286 S.W.3d at 635 (citing *Longaker v. Evans*, 32 S.W.3d 725, 733 n.2 (Tex. App.–San Antonio 2000, pet. withdrawn)). The Crockers are not seeking "fee damages." They are seeking to recover actual damages. *See Slay v. Burnett Trust*, 143 Tex. 621, 187 S.W.2d 377, 391 (1945) (op. on reh'g) (en banc) (explaining that a trustee would be liable to trust beneficiaries for any actual loss to a trust resulting from the loan of trust assets made in breach of the trustee's fiduciary duty to avoid self-dealing, but in this case there was a question of fact as to whether the trust actually lost anything on the loan). Injury and causation are still required when a plaintiff seeks to recover actual damages for a breach of fiduciary duty. *Si Kyu Kim*, 286 S.W.3d at 635 (citing *Longaker*, 32 S.W.3d at 733); *Hoover v. Larkin*, 196 S.W.3d 227, 233 (Tex. App.–Houston [1st Dist.] 2006, pet. denied) (setting out, in a breach of fiduciary duty case, that while a plaintiff need not prove causation to recover disgorgement of fees, the plaintiff must prove causation to recover actual damages).

evidence from which the [juror] may reasonably infer that the [injury suffered and the] damages sued for have resulted from the conduct of the defendant." *Selectouch Corp. v. Perfect Starch, Inc.*, 111 S.W.3d 830, 835 (Tex. App.–Dallas 2003, no pet.); *see Haynes & Boone v. Bowser Bouldin, Ltd.*, 896 S.W.2d 179, 181-82 (Tex. 1995) (explaining that the causal nexus requirement is met when a jury is presented with pleading and proof that establishes a direct causal link between the actions of the defendant, the injury suffered, and the damages awarded); *see also Adame v. Law Office of Allison & Huerta*, No. 13-04-670-CV, 2008 Tex. App. LEXIS 3912, at **11-12 (Tex. App.–Corpus Christi May 22, 2008, pet. denied) (mem. op.) (setting out, in an appeal from the granting of a summary judgment in a legal malpractice action, that proof of a causal nexus is necessary to ascertain the amount of damages to which a plaintiff is entitled).

Question 5 of the jury charge asked, "Do you find from a preponderance of the evidence that the breach of fiduciary duty, if any you have found in answer to Question 4, proximately caused an injury to Susan and Jeanne Crocker?" The jury responded, "We do." The jury charge defined "proximate cause" as,

> that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using the degree of care required of him would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

Contingent on finding Wells Fargo's actions caused an injury, the jury was asked "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate Susan and Jeanne Crocker for their damages, if any, that resulted from the injury you have found?" The jury was instructed to consider only the following elements of damages:

13

"[p]roperty belonging to the [e]state wrongfully distributed to a person . . . not entitled to receive the property under the terms of the Will." The jury answered "$230,000.00." Based on the damage question, the jury implicitly determined that an injury occurred because the disputed funds belonged to the estate and were wrongfully distributed to Launa who was not entitled to receive those funds under John's will.[9]

In determining whether there is legally sufficient evidence to support the proximate cause finding, we consider the following evidence favorable to the finding: (1) Wells Fargo set up the disputed account[10] as a joint account without ROS; (2) Wells Fargo paid $230,000 to Launa after she claimed a right to the funds in the disputed account; (3) the funds were paid to Launa and did not enter the estate; and (4) Susan and Jeanne were residual beneficiaries under their father's will and stood to inherit the remainder of the estate.[11] While this evidence supports a finding that, through Wells Fargo's actions, the

---

[9] We note that this determination could be characterized as an issue of law; however, on appeal, neither party has raised charge error in this regard. Therefore, we will consider the charge as a proper charge and the jury as the proper party to determine this issue. *See Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 221 (Tex. 2005); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 715 (Tex. 2001); *see also Minn. Life Ins. Co. v. Vasquez*, 192 S.W.3d 774, 778 (Tex. 2006).

[10] A copy of the disputed joint account summary from April through June 2000 was admitted as Defense Exhibit 16. The summary identified the account as John and Launa Crocker's "Inv Agency Account." The holdings in the account consisted of money market and fixed income funds.

[11] Susan and Jeanne contend that Wells Fargo's position that it paid the right person is wrong because there was no right of survivorship created in the disputed account. They support their contention with the following arguments: (1) the absence of a signed agency agreement precluded the application of section 439 of the probate code, *see* TEX. PROB. CODE ANN. § 439 (Vernon 2003) (regarding rights of survivorship); (2) the premarital agreement applied only to "bank accounts," which they contend the jury implicitly determined did not include the disputed account; and (3) even if the disputed account could be considered a bank account, they were harmed by the breach because (a) the premarital agreement only referred to a contractual obligation to establish a ROS and did not create a ROS itself, and (b) Wells Fargo was bound by the form of the account regardless of the threat of a future lawsuit or claim against the estate from Launa. However, although Susan and Jeanne presented the foregoing arguments at trial and now on appeal, they did not proffer testimony to substantiate these arguments and to explain how they were entitled to the disputed funds. *See King Ranch*, 118 S.W.3d at 751. Rather, the only person who testified as to the ramifications of the transaction was Smith, who consistently testified that the money was properly distributed to Launa and who also testified that the disputed account was a bank account. *See supra* n. 9.

money did not become part of the John's estate, this evidence is no more than a mere scintilla to establish that the disputed funds actually belonged to the estate and were wrongfully distributed to Launa. *King Ranch*, 118 S.W.3d at 751. Thus, we find no evidence that an injury was shown.

Moreover, the jury also heard the following testimony put on by Wells Fargo: (1) the joint account at issue took its funds from two other joint accounts which contained community property and provided for ROS; (2) John and Launa's premarital agreement provided that "all bank accounts opened after the date of marriage in the names of both [John and Launa] shall be considered community property" and "shall be held in such a manner as to provide the right of survivorship to the remaining party upon the death of the other"; (3) after John's death, Launa noticed that $334,000 was missing from one of her joint accounts with ROS; (4) at John's request that money had been transferred into the disputed joint account; (5) Launa's attorney contacted Wells Fargo to assert Launa's entitlement to the funds in the disputed account; (6) Wells Fargo discussed this matter with counsel who advised it that Launa was entitled to the funds; (7) Smith testified that it was his opinion that Launa "was legally entitled to the funds in that account and that any litigation with regard to that would result in additional expense to the estate"; (8) Smith also testified that the disputed account was a "bank account" and was a joint account subject to the right of a survivorship provided by the premarital agreement; and (9) when Wells Fargo met with Launa, in accordance with Smith's advice, it distributed to Launa the full $460,000 from the disputed joint account. We consider this contrary evidence in our legal sufficiency review of this issue because we conclude that a reasonable juror could not have disregarded it. *See City of Keller*, 168 S.W.3d at 807, 827.

15

In sum, Susan and Jeanne failed to carry their burden to establish causation; they failed to establish that they were entitled to receive the $230,000. *See King Ranch*, 118 S.W.3d at 751. We sustain Wells Fargo's first issue on this basis.

### III. PUNITIVE DAMAGES

Having sustained Wells Fargo's actual damage issue, we need not review its remaining issues challenging punitive damages. There can be no punitive damage award without a recovery of actual damages. *See Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 904 (Tex. 1985); *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 753-54 (Tex. 1984); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 41.004(a) (Vernon 2008) (codifying the common-law rule in actions governed by the exemplary damage statute).

### IV. CONCLUSION

We reverse and render judgment that Susan Crocker and Jeanne Crocker take nothing.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 29th
day of December, 2009.

16